**Alfred MORRIS, Appellant,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY.**

No. 81–1209.

United States Court of Appeals, District of Columbia Circuit.

Argued May 3, 1982.

Decided March 8, 1983.

Peg Shaw, Washington, D.C., for appellant.

Donald A. Clower, Great Falls, Va., for appellee.

Before MacKINNON and WILKEY, Circuit Judges, and HAROLD H. GREENE,[*] Judge, United States District Court for the District of Columbia.

Opinion for the Court filed by Circuit Judge MacKINNON.

MacKINNON, Circuit Judge:

The district court entered judgment on a verdict in favor of defendant-appellee on plaintiff-appellant's complaint that he was discharged from employment in violation of the First Amendment. Appellant contends that the trial judge erred in several respects in ruling that certain of plaintiff's proffered proofs were inadmissible. Because we find merit in appellant's contentions that the district court erred in excluding (1) evidence of the employer's retaliatory actions against appellant prior to the discharge and (2) evidence of a pattern of retaliation against other employees, we reverse and remand the case for a new trial. Because we also have some concern that the state of the pleadings in the district court has permitted the parties to proceed without adequately establishing either the jurisdictional or the substantive basis of this action, we further instruct the trial court to grant leave to amend the pleadings in accordance with the following opinion.

## I. BACKGROUND

Appellee Washington Metropolitan Area Transit Authority (the Authority), is an agency operated pursuant to a 1967 interstate compact between the District of Columbia and the states of Virginia and Maryland.[1] The Authority is responsible for the operation of the subway and bus systems in the Washington, D.C. metropolitan area. Appellant Morris was an officer employed by the Authority's Transit Police Force (the Force) from November 1974 until his discharge in October 1976.

The discharge led Morris to file the present action in District Court on May 23, 1980.[2] The complaint set forth three counts. Count 1, styled "Race Discrimination," alleged that "throughout Plaintiff's tenure on the WMATA police force black officers were treated differently with respect to matters of promotion and discipline," that Morris was one of the black officers who suffered incidents of disproportionate discipline because of his race, and that the Authority ultimately relied upon these incidents "as a pretext to fire him." Complaint ¶¶ 5, 6. Count 2, styled "Retaliation," alleged that as a result of several complaints he made regarding the racial discrimination allegedly practiced on the Force, Morris "was singled out and fired ... in retaliation for the exercise of his rights." In these counts—the first premised on racial discrimination, the second on *complaints about* such discrimination—Morris relied upon Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* (1976).[3]

Count 3, with which we are primarily concerned on this appeal, was styled "First Amendment." This count alleged that "because plaintiff exercised his right to free speech, in criticizing the practice of race discrimination and disparate treatment, Defendant fired the plaintiff in violation of the rights guaranteed to him under the First Amendment...." Complaint ¶ 11.

Plaintiff sought a variety of remedies for these alleged injuries. These included reinstatement with back pay, promotion to the

---

[*] Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. *See* Pub.L. No. 89–774, 80 Stat. 1324 (1967).

2. No explanation for the three-and-a-half year interval between the discharge and the filing of the complaint appears in the record.

3. *See* 42 U.S.C. §§ 2000e–2(a)(1) (race discrimination), 2000e–3(a) (retaliation).

pay grade he would have attained in the normal course of advancement in the Force, $500,000 in compensatory and punitive damages, and a declaration that his statutory and constitutional rights had been violated.

By order of November 3, 1980, the trial court granted Morris' demand for a jury trial as to the First Amendment claim but denied it as to the Title VII counts.[4] The jury trial commenced on November 13, 1980. On November 17, the jury returned a general verdict and answered interrogatories in favor of the defendant Authority. Morris' motion for a new trial was denied, and he appeals.

## II. Discussion

### A. *Preliminary Jurisdictional and Substantive Questions*

■ Although appellant has limited his appeal to challenging three evidentiary rulings by the trial court, we find it necessary before considering these issues to raise *sua sponte* a question going to the substantive theory, and perhaps to the jurisdictional basis, of appellant's case. Such matters casting doubt upon the existence of federal subject matter jurisdiction are the proper subject of consideration on the court's own motion, as neither the consent or omission of the parties nor the acquiescence of the court can confer jurisdiction where none exists. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 398, 99 S.Ct. 1171, 1175, 59 L.Ed.2d 401 (1979); *Liberty Mutual Insurance Co. v. Wetzel,* 424 U.S. 737, 740, 96 S.Ct. 1202, 1205, 47 L.Ed.2d 435 (1976); *Louisville & N. Ry. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908). While our concern extends beyond the issue of jurisdiction to embrace the remedial theory under which Morris seeks relief, we deem it desirable and helpful, in order to assist both parties on remand in the instant case, to set forth the following observations on the nature of appellant's claim.[5]

The action appears to have proceeded thus far on the assumption that the First Amendment provides a direct remedy for the conduct complained of here.[6] We have serious doubts as to the correctness of that assumption.

■ Were the Authority an agency of the federal government, it is clear that Morris' exclusive remedy for the retaliatory conduct alleged would be the retaliation provision of Title VII, 42 U.S.C. § 2000e–3(a) (1976). *Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). As we recently noted, *Brown* held Title VII to be "the exclusive source of judicial remedies for discrimination arising out of federal employment." *Borrell v. United States International Communications Agency,* 682 F.2d 981, 989 (D.C. Cir.1982). Absent a showing that Title VII provides inadequate protection for his or her rights,[7] *see id.,* a federal employee urging unlawful discrimination is confined to actions under that statute. Hence, a direct constitutional action by an employee against an agency of the United States or its officials would be foreclosed on the facts of the present case.

■ Title VII, however, does not similarly preempt the pursuit by *state* employees of alternative remedies against the agencies or officials that employ them. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). Assuming that the sovereign immunity guaranteed by the Eleventh Amendment does

---

4. No appeal is taken from the ruling on the Title VII counts. The Title VII claims were voluntarily dismissed with prejudice after the jury verdict on the First Amendment claim was announced.

5. *Compare Rotolo v. Borough of Charleroi,* 532 F.2d 920 (3d Cir.1976) (per curiam) (remanding to permit amendment of jurisdictional allegations) *with Smith v. Spina,* 477 F.2d 1140 (3d Cir.1973) (affirming despite erroneous substan-

tive and jurisdictional theories upon which case was tried).

6. The parties' references in the district court proceedings to *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), confirm this view.

7. *See* note 10 *infra.*

not otherwise foreclose an action of such character, a nonfederal public employee generally has resort to all other statutory and constitutional remedies available to redress deprivations of constitutional rights. Therefore, before we can proceed to the merits of appellant's arguments relating to the proof of his constitutionally-based claim, it must be determined whether appellant, in relying upon the First Amendment, has stated an available ground for relief. That question, as the foregoing suggests, reduces to whether Morris was a federal or a nonfederal employee at the time he was dismissed by the Authority.

■ The Authority, as noted earlier, is the product of an interstate compact entered into by Virginia, Maryland, and the District of Columbia, and approved by the Congress as required by Art. I, § 3 of the Constitution. Pub.L. No. 89–774, 80 Stat. 1324 (1967). The fact that the requisite congressional approval of the Authority's creation and operation was secured does not, however, compel the conclusion that the Authority is an agency of the federal government. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 399 n. 13, 99 S.Ct. 1171, 1176 n. 13, 59 L.Ed.2d 401 (1979). While we leave the question open for further development by the parties on remand, it would appear at first blush that the Authority is an instrumentality of "each of the signatory parties" to the interstate compact, Pub.L. No. 89–774, § 4, and thus a creature of the states and the District of Columbia, which acts "under color of state law," 42 U.S.C. § 1983 (Supp. IV 1980).[8]

Assuming that the Authority is properly considered to be a nonfederal employer, a further problem arises as to its precise status under state law. For if the Authority were to be held an *instrumentality,* rather than a "political subdivision," of the signatory states, its successful invocation of the

Eleventh Amendment's immunization of the states from actions for damages in the federal courts would render this court without jurisdiction to hear the case, *Edelman v. Jordan,* 415 U.S. 651, 677–78, 94 S.Ct. 1347, 1362–63, 39 L.Ed.2d 662 (1974), and the judgment of the district court a nullity.

Because *Lake Country Estates* and the terms of Public Law 89–774, §§ 12(a), 16, 17, 18, and 80 strongly indicate that the Authority is either not cloaked with the immunity enjoyed by Virginia and Maryland, or has waived such immunity, *see Hodgers v. Tomberlin,* 510 F.Supp. 1280, 1283 (N.D.Ga.1980), it would conserve judicial resources to review the merits of this case on the present appeal. However, the issues have not been argued and we do not wish to foreclose further development of the jurisdictional issues by a ruling that would constitute the law of the case. We therefore leave this matter as well for the district court to resolve on the basis of the record before it and any further submissions by the parties. *See Van Ooteghem v. Gray,* 654 F.2d 304, 306 (5th Cir.1981) (en banc), *cert. denied,* 455 U.S. 909, 102 S.Ct. 1255, 71 L.Ed.2d 447 (1982). We note that the District of Columbia Court of Appeals recently held that the Authority is an agent of each sovereign signatory to the compact and that the compact waives the signatories' sovereign immunity for proprietary functions. *Qasim v. WMATA,* 455 A.2d 904 at 906 (D.C.App.1983) (per curiam).

Assuming that Morris' claim is neither jurisdictionally barred by the Eleventh Amendment nor preempted by the provisions of Title VII, one final preliminary issue remains concerning the nature of the remedy sought. Morris' free speech claim relies directly on the First Amendment as the source of the remedy sought. Yet although the courts have recognized the ex-

---

**8.** Particularly instructive on this point, owing to its strongly similar factual situation, is *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979). In that case, the Court held that the defendant agency, which had been

created by a congressionally approved compact between the states of California and Nevada, was nonetheless acting under state law. *See also Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35 (2d Cir.1977).

istence of a *Bivens*-type remedy for violations of the First Amendment,[9] it is not clear that a remedy based exclusively on that amendment can be had against anyone other than *federal* defendants acting pursuant to *federal* law. A direct constitutional remedy for the unlawful conduct of *state* actors, if any such remedy exists, would necessarily depend upon the Fourteenth Amendment, incorporating the substantive guarantees of the First, as its source.[10] We need not resolve this question, since the statutory remedy granted by 42 U.S.C. § 1983 does afford relief for the infringement of First Amendment rights alleged here. Accordingly, we treat Morris' claim on appeal as if it were an action under section 1983.[11]

We have noted only two significant questions arising out of the parties' failure to explore fully the nature of the claim involved in this appeal. There may well be other substantial differences between the action as it has been perceived to this point and as we think it should be viewed; we do not seek to identify or elaborate upon them. In addition to our disposition of the particular matters discussed below, therefore, we direct the district court on remand to permit the parties to amend their pleadings in light of our opinion [12] and to address any new legal issues thereby placed in dispute.

**9.** *See, e.g., Dellums v. Powell,* 556 F.2d 167, 194–96 (D.C.Cir.1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978). *See also Angola v. Civiletti,* 666 F.2d 1 (2d Cir. 1981); *Paton v. LaPrade,* 524 F.2d 862, 869–71 (3d Cir.1975); *Yiamouyiannis v. Chemical Abstracts Service,* 521 F.2d 1392, 1393 (6th Cir. 1975), *cert. denied,* 439 U.S. 983, 99 S.Ct. 573, 58 L.Ed.2d 654 (1978); *Butler v. United States,* 365 F.Supp. 1035 (D.Hawaii 1973). A direct First Amendment remedy has been recognized in discharge cases brought by federal employees who do not enjoy the full protections of Title VII, *e.g., Borrell v. United States Int'l Comm. Agcy.,* 682 F.2d 981 (D.C.Cir.1982); *Mazaleski v. Treusdell,* 562 F.2d 701 (D.C.Cir. 1977). *See also Tygrett v. Barry,* 627 F.2d 1279 (D.C.Cir.1980) (District of Columbia employee); *Egger v. Phillips,* 669 F.2d 497 (7th Cir.1982) (transfer and discharge).

**10.** The availability of a *Bivens*-type Fourteenth Amendment remedy against nonfederal defendants is subject to serious question. The Supreme Court has explicitly reserved decision on the question. *Mt. Healthy Bd. of Educ. v. Doyle,* 429 U.S. 274, 278, 97 S.Ct. 568, 571, 50 L.Ed.2d 471 (1977); *see Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 398–400, 99 S.Ct. 1171, 1175–1177, 59 L.Ed.2d 401 (1979). Moreover, in view of the Court's decision in *Monell v. Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), holding that political subdivisions of states are "persons" subject to suit under section 1983, it seems unlikely that the federal courts will feel free to imply a direct constitutional remedy in the face of the statutory remedy now available against nonfederal defendants. *See Carlson v. Green,* 446 U.S. 14, 52 & n. 18, 100 S.Ct. 1468, 1489 & n. 18, 64 L.Ed.2d 15 (1980) (Rehnquist, J., dissenting); *Bivens v. Six Unknown Named Agents, supra,* 403 U.S. at 407–11, 91 S.Ct. at 2010–12 (Harlan, J., concurring). The Courts of Appeals that have reached the issue since the *Monell*

decision are unanimous in rejecting such a remedy. *See Rogin v. Bensalem Township,* 616 F.2d 680, 686 (3d Cir.1980), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981); *Bishop v. Tice,* 622 F.2d 349 (8th Cir. 1980); *Owen v. City of Independence,* 589 F.2d 335 (8th Cir.1978), *rev'd on other grounds,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Turpin v. Mailet,* 591 F.2d 426 (2d Cir.1979) (en banc), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980); *Cale v. City of Covington,* 586 F.2d 311 (4th Cir.1978); *Molina v. Richardson,* 578 F.2d 846 (9th Cir.), *cert. denied,* 439 U.S. 1048, 99 S.Ct. 724, 58 L.Ed.2d 706 (1978). Even prior to *Monell,* courts denied the availability of such an implied remedy. *See, e.g., Kostka v. Hogg,* 560 F.2d 37 (1st Cir.1977). *See also Huemmer v. Mayor of Ocean City,* 474 F.Supp. 704, 712–18 & nn. 8–15 (D.Md.1979) (collecting authorities), *aff'd in part and rev'd in part,* 632 F.2d 371 (4th Cir.1980); *Mahone v. Waddle,* 564 F.2d 1018 (3d Cir.1977), *cert. denied,* 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978); *Curran v. Portland Superintending School Comm.,* 435 F.Supp. 1063 (D.Me.1977). *Contra Daughty v. Arlington County,* 490 F.Supp. 307 (D.D.C. 1980).

**11.** The proof required under either theory of liability would, in the present case, be the same. *See Tarpley v. Greene,* 684 F.2d 1 (D.C. Cir.1982); *Eklund v. Hardiman,* 526 F.Supp. 941 (N.D.Ill.1981).

**12.** *See* 28 U.S.C. § 1653 (1976) (permitting amendment of jurisdictional allegations in either trial or appellate court). In light of the Supreme Court's ruling in *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), it is possible that Morris' original allegation of federal question jurisdiction under 28 U.S.C. § 1331 is a sufficient allegation of jurisdiction to support his action when recast as a

## B. Evidentiary Issues

The parties were, and continue to be, in apparent agreement as to the elements of Morris' First Amendment claim. As set forth in the interrogatories propounded by the court to the jury, the action proceeded on the understanding that the burden was on plaintiff to prove

(1) that he "had reason to believe there was racial discrimination on the WMATA [Authority's] police force";

(2) that he "complained about racial discrimination at an appropriate time and place, in a manner [so as] not to interfere with his duties"; and

(3) that the Authority did "unreasonably take action against him solely as a result of these complaints, and did not terminate him on the basis of deficient performance and insubordination."

Verdict Interrogatories, Nos. 1–3.

The jury found that Morris had proved the second element, *i.e.*, that his complaints had been made at a reasonable time and place and in a reasonable manner. However, it found that he had failed to prove either that his belief that discrimination was being practiced was reasonable (element 1) or that the Authority had discharged him "solely" because of his complaints (element 3).

There is no dispute as to the basis for or correctness of the jury's ruling on the second element.[13] However, on appeal Morris urges that the trial court erroneously excluded evidence on both the reasonable belief issue and the retaliatory motive issue. We consider these claims in order.

### 1. The reasonableness of Morris' belief

The first element of Morris' claim identified in the district court, that the belief which gave rise to his complaints about the discrimination he perceived was one he in fact held and one which was "reasonable," is in essence a requirement that the plaintiff show his complaints to be speech falling within the protection of the First Amendment. Assuming the speech to be so protected, any restriction directed purely at suppressing its communicative content is impermissible save in the most extreme cases involving matters of "compelling" governmental interest. *Widmar v. Vincent,* 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981).

Morris sought to introduce testimony tending to show that there was a basis in fact for his belief that the Authority discriminated against black officers. The trial court, at the Authority's urging, excluded this testimony as irrelevant on the ground that the Authority had already stipulated to the fact that "the content of plaintiff's complaints or alleged complaints regarding racial discrimination ... falls within the categories of speech protected by the first amendment," Stipulation No. 1, and to the fact that Morris in fact believed that he had been discriminated against because of his race. Stipulation No. 2.

The transcript makes it apparent that the Authority stipulated to the protected status of Morris' complaints in order to prevent Morris from placing the details of the race discrimination complaints he voiced before the jury. Transcript (Tr.) 22. In other words, the Authority made the tactical decision to admit that Morris acted within his First Amendment rights,[14] in order to pre-

---

section 1983 claim, *see id.* at 8 n. 6, 100 S.Ct. at 2506 n. 6; *Mt. Healthy Bd. of Educ. v. Doyle,* 429 U.S. 274, 278–79, 97 S.Ct. 568, 571–72, 50 L.Ed.2d 471 (1977); *Hague v. CIO,* 307 U.S. 496, 529, 59 S.Ct. 954, 970, 83 L.Ed. 1423 (1939) (Stone, J.), particularly in view of the repeal of the amount-in-controversy requirement in section 1331, which is fully applicable to the present case. *Eikenberry v. Callahan,* 653 F.2d 632 (D.C.Cir.1981). Prudence, however, would dictate amendment of the jurisdictional allega-

tions to include reference to 28 U.S.C. § 1343(3).

**13.** Counsel for the Authority stated at the close of the evidence that this element was "largely conceded." Tr. 219.

**14.** That admission was not gratuitous. Numerous cases recognize that the free speech rights of one occupying the role of police officer may be significantly narrower than those held by other classes of employees. *See, e.g., Tygrett*

vent the admission of evidence that might have made the jury more receptive to Morris' theory of the Authority's motivation in discharging him.

The trial court correctly held that the stipulations entered into by the parties eliminated the need to adduce evidence on the question whether Morris' speech was protected by the First Amendment. The purpose and effect of the stipulations was precisely to pretermit any inquiry into whether Morris was justified in voicing his complaints. The defendant stipulated that the speech was "protected," Stipulation No. 1, and this was sufficient to dispose of the issue.[15]

However, we are presented with the fact that the court ultimately did submit to the jury an interrogatory asking whether Morris' belief was "reasonable," which the jury answered in the negative. In our view, the interrogatory was superfluous in light of the stipulations, and as a result the jury should not have reached the issue. Accordingly, the trial court should have instructed the jury, in line with Stipulation No. 1, that Morris' speech was entitled to full First Amendment protection, and that the only issues for the jury were the reasonableness of the time, place and manner of complaint, and the motivation for the firing.

Thus, although we reject appellant's challenge to the trial court's ruling that the stipulation rendered irrelevant appellant's proffered evidence regarding the reasonableness of his belief, we note that the stipulations should have been sufficient and the issue should not have been presented to the jury. Because we hold that the case must be remanded for a new trial for other reasons discussed below, we need not take the unusual step of reversing on grounds not urged by appellant. At trial upon remand, however, the court should instruct the jury that the parties have stipulated that Morris' complaints to his superiors were speech protected by the First Amendment.[16]

This ruling does not bar the introduction of testimony as to the nature of those complaints. Such testimony may be relevant, not to the "reasonableness" of Morris' beliefs, but to the question of the Authority's motivation in firing him. *Regardless* of the reasonableness of his belief in their validity, if Morris can show that his complaints about discrimination caused his discharge, he will have carried his burden. To the extent that the content of those complaints, as distinct from the mere fact of their having been voiced, makes it more or less likely that Morris was discharged because he exercised his right to speak, that content will

*v. Barry,* 627 F.2d 1279 (D.C.Cir.1980); *Wilson v. Taylor,* 658 F.2d 1021 (5th Cir.1981).

**15.** The following excerpts confirm the trial court's understanding of the effect of the stipulations:

> [Counsel for defendant]: If we agree [*i.e.,* stipulate] then that what he said he had a right to say, that it is protected [sic], then I cannot understand why the content of such speech is relevant.
>
> Tr. 41.
>
> [Counsel for plaintiff]: What it is that in each incident [of complaint] I feel we have to do is give the underlying reasonableness of [Morris' complaint] when they have only stipulated to the fact that he believed it himself . . . .
>
> The Court: Well, I only thought it had to do with the actions of his *superiors* that were allegedly unreasonable.
>
> Tr. 43–44 (emphasis added).
>
> [Counsel for plaintiff]: If I can respectfully request the court for some guidance on just how I can go as to what he was saying was reasonable.

> The Court: It is not what he thought was reasonable. It is what his superiors thought was unreasonable or he did that was unreasonable.
>
> Tr. 46.
>
> It is indeed difficult to reconcile the concessions by the Authority in the pretrial stage with its motion for a directed verdict, which relied in part on the claim that the "reasonable belief" element had not been proven. Tr. 219.

**16.** The confusion concerning the stipulation as to Morris' belief can in some sense be laid at the feet of Morris himself, who propounded the erroneous jury instructions to the contrary, and continues to view the issue of protectedness as requiring proof. On the other hand, it was the Authority that originally sought and received the benefit of the stipulation with which the jury verdict conflicts, *i.e.,* the exclusion of testimony bearing on race discrimination. Both parties are thus seeking tactical advantages, and neither will be prejudiced by our decision to give force to the stipulation.

be relevant and admissible on the question of motivation.

## 2. *The motivation for the discharge*

 Morris attempted to prove that the Authority's action was taken in retaliation for his speech by showing (1) that the Authority had a practice of retaliating against employees who complained about allegedly unlawful employment practices [17] and (2) that the Authority's allegations of unsatisfactory job performance on appellant's part were in fact merely pretextual because those citations were themselves acts of retaliation. In short, Morris attempted to make out a prima facie case of retaliatory discharge and then to discredit the Authority's asserted nonretaliatory justification for the firing.

The trial court excluded evidence proffered by Morris on both questions. For the reasons set forth below, we find that these rulings were erroneous.

### (a) *Pattern of retaliation*

 Given a satisfactory demonstration —or, as here, a concession—that his speech was protected by the First Amendment, a prima facie case of unlawful discharge is made out if a plaintiff shows that the exercise of his right to speak and petition was a "substantial" or "motivating" factor in the decision to fire him. *Mt. Healthy Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). In other words, the plaintiff must show that "but for" his speech he would not have been fired. *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 417, 99 S.Ct. 693, 697, 58 L.Ed.2d 619 (1979); *Egger v. Phillips,* 669 F.2d 497 (7th Cir.1982). In order to impose liability on a political subdivision, as distinct from its employees or

officials, a section 1983 plaintiff must also show that the unlawful decision was part of a "custom or policy" of unlawful firings on such grounds. *Monell v. Department of Social Services, supra,* 436 U.S. at 690–91, 98 S.Ct. at 2035–36 (1978). Once the plaintiff makes out a prima facie case, the burden shifts to the employer to show "by a preponderance of the evidence that it would have reached the same decision" to discharge the plaintiff "even in the absence of the protected conduct." *Mt. Healthy Board of Education v. Doyle, supra,* 429 U.S. at 287, 97 S.Ct. at 576. Plaintiff is then entitled to rebut this justification by proving it is merely pretextual.

In the present case the court instructed the jury that, in order to find for the plaintiff, they would have to determine that the Authority had discharged Morris *"solely"* because of his protected complaints. Jury Instruction No. 1.[18] Even if the "sole factor" test were correct, we would be forced to agree with appellant that the testimony of other employees as to the Authority's treatment of other complaints about employment conditions was improperly excluded.

The question of the legitimacy of the employer's motivation in firing the employee—*i.e.,* the question whether an improper motive was a "but for" cause of the discharge—is one upon which the past acts of the employer have some bearing. *See, e.g., Pennsylvania v. Porter,* 659 F.2d 306, 320 (3d Cir.1981); *Scaramuzzo v. Glenmore Distilleries, Inc.,* 501 F.Supp. 727, 733 n. 7 (N.D.Ill.1980), *and cases cited.* They also tend to show the existence of a "custom or policy" of unconstitutional acts, necessary to a finding of liability against the Authority. With regard to the latter, it bears

---

**17.** Morris sought to adduce evidence of retaliation for complaints about sex discrimination and safety violations, as well as complaints like his own directed at race discrimination.

**18.** Reliance on this legal standard can again be traced to plaintiff's own requested instruction. *See* Plaintiff's Requested Jury Instruction No. 1 (jury must find "that the plaintiff's complaint was the sole cause of the termination"). For

the obvious reason that the instruction was his own, Morris did not object to it at trial, nor does he challenge it on appeal. Instead, on the assumption that the "sole factor" standard was proper, he argues that the trial court erred in refusing to admit evidence tending to show a pattern or practice of discharges or other discipline in retaliation for complaints about the Authority's employment practices.

noting that were evidence of other instances of retaliation inadmissible, it would be difficult to imagine many cases in which the "custom or policy" element could be proved save those in which the plaintiff could⁰ elicit testimony from the defendant's own agents that such a custom exists.

This conclusion as to the relevance of past acts of retaliation is the same whether the legal standard on which the jury was charged was the "sole" factor or the "substantial or motivating" factor test.[19] The legal *standard* for proof of causation is independent of the issue of whether evidence is *relevant* to causation. Here the plaintiff must show both that his dismissal was substantially caused by his speech and that this causation was not unique to his case but rather was customary in cases of complaint. The evidence plaintiff sought to adduce of past retaliation by the Authority for complaints from members of the Force was relevant to both requirements.

Morris attempted to introduce the testimony of three WMATA police officers, Bruce, Famoudou, and Nicola, in support of his allegation that the Authority engaged in the practice of retaliation against employees who complained about its employment practices. The district court excluded testimony by two of the three.

Officer Nicola, who is white, was employed by the Authority beginning in January 1977, and served as the officers' union shop steward. He was prepared to testify both as to management's disparate treatment of him in retaliation for his union organizing activities[20] and as to the disciplining of other officers in retaliation for complaints about employment conditions, with which he was familiar from his role as shop steward. The trial court took the view that Nicola's testimony that he *personally*

had been disciplined for complaining was relevant to Morris' claim only insofar as it would relate other instances of retaliation for complaints *about racial discrimination.* Tr. 212–13B. Nicola would have testified only to events concerning complaints about sex discrimination and safety matters. Consequently, only one of plaintiff's witnesses, Officer Famoudou, was permitted to testify as to the Authority's response to his complaints, which concerned racial discrimination specifically. *See* Tr. 201, 203–04, 206.

We think this limitation on testimony was erroneous. Morris' claim that his First Amendment rights were violated rested upon an allegation that the Authority had retaliated against him for complaints that were protected speech and which were made in a reasonable time, place, and manner. Although Morris' complaints were directed at the Authority's treatment of its black employees, whereas the proffered testimony of Nicola concerned other sorts of employee complaints (made by Nicola himself and by other officers), we think that evidence showing that the employer followed a broad practice of retaliation and responded to any protected criticism with disciplinary action has some probative value on the issue of the employer's likely motivation here. Fed.R.Evid. 401. Evidence of other acts may be admitted to show motive, intent, preparation or plan. *Id.* 404(b). *See, e.g., Pennsylvania v. Porter,* 659 F.2d 306, 310 (3d Cir.1981). Under the circumstances of this case, the court should have admitted the evidence as relevant, and permitted the *jury* to consider whether the Authority's response to criticism on other subjects, if proved, was persuasive of its motivation in firing Morris for the reasons he claims.[21]

**19.** It will be open to the parties on remand to consider further whether the "sole factor" test to be applied is the proper legal standard in this case.

**20.** According to plaintiff's counsel, Tr. 211–12, Nicola was prepared to testify that he had been denied permission to take the examination for promotion to sergeant for three successive

years and had been verbally harassed as a result of his union activities. Tr. 212.

**21.** As the trial court recognized elsewhere, even where evidence of other officers' experiences is relevant, the question remains whether a given witness is competent to testify as to those experiences. In particular, the requirement that the witness testify from personal knowledge may prevent a person such as Offi-

Morris also proffered the testimony of Officer Bruce, who was an employee at the time Morris was discharged, and who acted as a union shop steward during and after Morris' tenure on the Force.[22] Unlike Nicola, Bruce was permitted to testify to instances in which he personally had been charged with violations of Force regulations.[23] However, Bruce was not allowed to testify regarding complaints made by other officers or the Authority's response to such complaints.

As with the proffered testimony of Officer Nicola, appellant's contention on appeal with respect to Officer Bruce is that he should have been permitted to testify as to the discipline meted out to officers besides himself and appellant, and to the First Amendment activities of those so disciplined. Appellant argues that Bruce, as one who acted in the capacity of a shop steward handling employee-employer grievances regularly, was qualified to testify as to the correlation, if any, between complaints and discipline, and that the trial court's confinement of Bruce's testimony to his own discipline was therefore error.

From the outset, counsel for plaintiff cast as one of "reasonableness" the inquiry into the motivation in firing Morris. *See, e.g.,* Tr. 46, 148. It appears that this emphasis on the "reasonableness" of the firing, instead of upon the probable *motivation* for the firing, ultimately led the court to confine the evidence to the facts surrounding the disciplining of Morris himself. Tr. 167. Although the court at one point appears to have recognized that the discipline accorded other officers could have been relevant to the motivation element, Tr. 168, it is evident from the record that the court gave plaintiff's counsel the clear impression that Bruce would not be permitted to testify to instances of discipline other than those directed against the witness *personally* or those with respect to which he represented Morris before the Authority.

Again, although testimony generally must be based upon personal knowledge, the requisite knowledge can be knowledge of the treatment accorded others. If a proper foundation was laid that Bruce had knowledge of other instances in which protected complaints were followed by official discipline—whether such knowledge came from first-hand observation, from records kept in the ordinary course of business, or from some other acceptable source—then he was competent to adduce that evidence. We conclude, therefore, that to the extent the testimony of Nicola and Bruce met these requirements, it should have been admitted.[24]

### (b) *Pretext*

The defense offered by the Authority to Morris' claim was in essence that its decision to discharge Morris was grounded on

cer Nicola, a shop steward, from testifying to details of other employees' conduct and any resulting employer response. *See* Fed.R.Evid. 602. It is possible, however, that in the present case Officer Nicola could have testified to the circumstances of disciplinary or grievance procedures in which he personally participated.

22. There was some dispute as to whether Officer Bruce was acting as the union shop steward at the time of the firing. The Authority objected to Bruce's representation that he acted as steward on the ground that no union contract was signed until after Morris had been discharged. The trial court took the view that Bruce was in any event qualified to testify as to any assistance Bruce had given Morris in responding to the notice of removal, whether as a steward or simply as a friend.

23. However, counsel for the plaintiff made no attempt to relate these charges to any protect-

ed First Amendment activity carried on by Officer Bruce. The essence of Bruce's testimony was simply that he had been given lighter punishments for his infractions of Force rules than had Morris for like violations. No attempt was made during examination to explore any complaints Bruce had made in the course of his employment, or to bring out the fact that he made none if such was the case.

24. The trial court also excluded the testimony on the grounds of competence. For the reasons discussed above, and because the trial court did not permit a full exploration of this issue, we conclude that exclusion on this basis was also erroneous. We venture no guess as to whether a full exploration will produce a proper foundation for the admission of such evidence.

numerous violations of legitimate Force regulations. The Authority adverted to seventeen breaches of regulations during Morris' twenty-three month tenure,[25] culminating in a failure to report for duty when directly ordered to do so. Assistant Deputy Chief Stewart testified on behalf of the Authority that these recurrent violations constituted the true basis for Morris' dismissal. Tr. 363–69.

Morris sought to meet the Authority's defense by showing that the series of infractions allegedly leading to his firing was actually a series of unlawful retaliatory actions for various complaints he had voiced, in which the Authority had imposed disproportionate punishment for breaches of rules that normally went unpunished. In short, Morris sought to convince the jury that the Authority's justification was purely pretextual and fabricated only to disguise its real retaliatory motive. *See, e.g.,* Tr. 232.

Morris attempted to substantiate his pretext theory with evidence that the instances of discipline leading up to his discharge typically followed close on the heels of one of his complaints to the Authority. By showing that discipline for breaches of duty that would normally be overlooked was regularly enforced only against those who voiced complaints about conditions of employment, Morris sought to convince the jury that the Authority was in fact unlawfully punishing not the breaches but the speech. This is a typical response, and the jury was fully justified in not believing it. Many violators attempt to excuse their conduct by pointing to someone else who went unpunished for "identical" conduct. The jury simply decided it was not identical, and we agree.

The trial court permitted Morris to testify to seven instances in which he complained to Authority officials (in one instance, to a D.C. Council member who sat on the Authority board of directors) about disparate treatment accorded black and white officers on the Force. However, when counsel on direct examination attempted to elicit Morris' account of how each complaint was followed in short order by a finding that he had violated Force regulations—in each case a violation that Morris alleged would usually have gone unpunished—the trial court sustained defense counsel's objections that the evidence was irrelevant. Because plaintiff had specified only the complaints in its trial brief, and not the consequent unjustified discipline, the court took the view that evidence of the discipline was beyond the scope of plaintiff's case and barred by the court's pretrial order.[26]

As it happened, the instances of discipline to which Morris sought to testify were precisely those upon which the Authority relied in contending that its discharge was justified. Both parties sought to put the identical instances of discipline into evidence: Morris, for the purpose of showing that punishment followed his complaints; and the Authority, for the purpose of showing it had legitimate grounds for its action. Morris' contention on appeal is that he should have been permitted, on direct examination, to testify to the discipline in a way that made evident the retaliatory motivation for the discipline.

We agree, for several reasons. First, it was evident from the plaintiff's pretrial statement *taken as a whole* that Morris would seek in testifying to elucidate the link between his complaints and the disciplinary measures. The pretrial statement includes the contention that "as a result of his lawful and justified complaints his superiors singled him out for harsh discipline not given others, and finally terminated him on the pretext of deficient performance and insubordination." Plaintiff's Pretrial

---

**25.** Defendant's Trial Brief at 4. These included five instances of tardiness; four instances of lost or misplaced equipment (handcuffs, badge, ID card, and baton); four absences without leave; and several acts of insubordination, failure to follow regulations, or failure to obey an order.

**26.** The pretrial order required the plaintiff to identify, *inter alia*, "all facts which plaintiff intends to prove at trial to sustain each element of the claim(s) for relief . . . ." Pretrial Order at 2–3.

Statement at II.A(4). It is apparent from this statement of the plaintiff's basic theory of the case that he sought to prove a connection between his speech and the Authority's asserted justification.

Second, it is evident from the case put on by the Authority that it could not have been surprised or otherwise prejudiced by the introduction of this testimony. Each instance of discipline about which Morris sought to testify was enumerated in the defendant's own trial brief. In fact, exposition of these instances constituted the bulk of the defense case.

Third, it is by now a recognized fact of employment discrimination litigation that showing of pretext can be part of the plaintiff's case in chief. The logical structure of a retaliation case, whether based upon Title VII or the First Amendment, consists in (1) the plaintiff proving his prima facie case, (2) the defendant providing a legitimate reason for its action, and (3) the plaintiff then having the opportunity to show that reason to be pretextual. However, the structure of the inquiry does not bar a plaintiff from adducing evidence of pretext at the same time his evidence of unlawful motive is presented. In instances where enforcing a rigid separation between the motivation and pretext cases would prevent the plaintiff from presenting a fair portrayal of the events as they unfolded, there is no reason to exclude evidence of pretext from plaintiff's case in chief, provided that the court and the defendant have notice, as they did here, of the plaintiff's ultimate intention to raise the pretext question.

We find under these circumstances that the exclusion of Morris' testimony regarding the discipline that followed (at least chronologically) his complaints to his employer was an abuse of discretion. Although we endorse the trial court's issuance of a detailed pretrial order governing the conduct of the litigation, in this instance the enforcement of the terms of part of that order by means of excluding testimony central to the plaintiff's case was an unduly strict approach. *See, e.g., Schneider v. Lockheed Aircraft Corp.,* 658 F.2d 835, 848 n. 8 (D.C.Cir.1981), *cert. denied,* 455 U.S. 994, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982).

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is vacated. The case is remanded for further proceedings consistent with this opinion.

*So ordered.*