OFFICE AND PROFESSIONAL EM-
PLOYEES INTERNATIONAL
UNION, LOCAL 2, Plaintiff,

v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY, Defendant.

Civ. A. No. 81-2476.

United States District Court,
District of Columbia.

Aug. 30, 1983.

Joseph E. Finley, Cole & Groner, P.C., Washington, D.C., for plaintiff.

James J. Kelley, Terence P. McCourt, Morgan, Lewis & Bockius, Washington, D.C., for defendant.

MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge.

In *Office and Professional Employees International Union, Local 2 v. Washington Metropolitan Area Transit Authority,* 552 F.Supp. 622 (D.D.C.1982) (*OPEIU*), this Court entered summary judgment for plain-

tiff, Office and Professional Employees International Union, Local 2 (Local 2), on the third and fourth causes of action of the First Amended Complaint.[1] Currently before the Court is the motion of the defendant, Washington Metropolitan Area Transit Authority (WMATA) for summary judgment on the remaining two causes of action of the First Amended Complaint, counts one and two.[2] On May 2, 1983, the Court issued a Notice to Counsel, requesting counsel to address the relevancy of *Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionery Workers International, AFL–CIO,* 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962). Based on *Drake Bakeries* and the reasons stated below, the Court *sua sponte* dismisses the first and second causes of action for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(h)(3), and orders the parties to submit those causes of action to arbitration.

The underlying facts in this litigation were reported in *OPEIU,* and need not be repeated. In its first cause of action, Local 2 seeks damages for breach of contract. Specifically, Local 2 lists six acts on the part of WMATA that amounted to breaches of the three agreements wherein Local 2 and WMATA had agreed to submit to the arbitration process. In the second cause of action, for which Local 2 also seeks damages, Local 2 contends that WMATA's breaches of contract violated section 66(c) of the Compact, D.C.Code § 1–2431.

Before approaching WMATA's motion for summary judgment on these causes of action, this Court must first ascertain whether there exists subject matter jurisdiction. The well-worn expression, "hornbook law," aptly describes the proposition

that the assertion of subject matter jurisdiction is open to question at any time, even on appeal by the court on its own initiative. At least since the decision of *Louisville & Northern Railway v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908), which has been "repeatedly ... reaffirmed," *Sumner v. Mata,* 449 U.S. 539, 548 n. 2, 101 S.Ct. 764, 769 n. 2, 66 L.Ed.2d 722 (1981), the Supreme Court has held that neither the acquiescence of the court nor the consent of the parties can confer such jurisdiction upon a federal district court when none exists. *Morris v. Washington Metropolitan Area Transit Authority,* 702 F.2d 1037, 1040 (D.C.Cir.1983). This doctrine has been incorporated into Fed.R.Civ.P. 12(h)(3), which provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Consequently, despite the fact that both parties insist that this Court has jurisdiction to decide the motion for summary judgment,[3] the Court is nonetheless required to inquire on its own initiative as to the source of that jurisdiction. Specifically, the issue is whether jurisdiction over the two causes of action lies in this Court, or instead with an arbitration board as provided for in the Compact.

Section 66(c) of the Compact provides for compulsory arbitration before an arbitration board of three arbitrators "[i]n case of any labor dispute" arising between WMATA and its employees.[4] *OPEIU,* 552 F.Supp. at 629; H.R.Rep. No. 1155, 92d Cong., 2d Sess. 9 (1972) (House Report). The Compact itself clearly states that the term "labor dispute" is to be "broadly construed," and goes on to state that the term

---

1. On November 26, 1982, this Court entered an Order certifying its opinion for interlocutory appeal. In May 1983, as a result of a Settlement Agreement reached by the parties, WMATA dismissed its appeal on count four, and Local 2 dismissed count five, which was still before this Court. On June 7, 1983, the Court of Appeals entered judgment affirming *OPEIU,* reserving disposition only with respect to issues raised by the intervenors in this Court, William B. Bircher and Alan B. Peck, on their appeals Nos. 82–2488, 82–2500.

2. Filed December 30, 1982, and supplemented on May 27, 1983.

3. *See* Response of Plaintiff to Notice to Counsel, filed May 24, 1983; Defendant's Memorandum of Law in Reply to Notice to Counsel, filed May 27, 1983.

4. Section 66(c) provides:
   In case of any labor dispute involving the Authority [WMATA] and such employees where collective bargaining does not result in agreement, the Authority shall submit such dispute to arbitration by a board composed

includes "any controversy ... that may arise ... including ... the making or maintaining of collective bargaining agreements." It further defines "labor dispute" to include the "interpretation or application" of collective bargaining agreements. In concluding its definition of the term, section 66(c) adds the words, "and any grievance that may arise." A broader definition cannot be imagined.

The Court therefore holds that the first and second causes of action fall within the term "labor dispute." By alleging breach of the three contracts—i.e., collective bargaining agreements—Local 2 has raised a "labor dispute" by presenting a "grievance" as to the "making or maintaining" and "interpretation or application" of these agreements.

When a labor dispute subject to the Compact's arbitration provisions arises, the Compact's legislative history makes clear that this Court may not assert its jurisdiction; rather the dispute must be submitted to arbitration. Section 66(c) of the Compact provides, in mandatory language, that WMATA "*shall* submit such dispute to arbitration" (emphasis added). The Senate Report states that "all unsettled labor disputes between the parties will be referred to final and binding arbitration." S.Rep. No. 931, 92d Cong., 2d Sess. 10 (1972) (Senate Report). The Court is limited to either compelling or enforcing arbitration. *See OPEIU* 552 F.Supp. at 628, *quoting* Senate Report at 9.

This policy of the Compact favoring arbitration of disputes, including damage suits for breach of contract, is identical to the policy governing similar suits under section 301(a) of the Labor Management Relations Act (Taft-Hartley Act), 29 U.S.C. § 185(a), and under the Railway Labor Act (RLA), 45 U.S.C. § 151 *et seq.*

The correlative principle under the Taft-Hartley Act was set forth by the Supreme Court in *Drake Bakeries.* In that proceeding, the employer sought damages in federal district court from the union for breach of the collective bargaining agreement. The agreement provided for arbitration of "all complaints, disputes or grievances ... involving questions of interpretation or application ... of this contract, or any act or conduct or relation between the parties thereto, directly or indirectly." 370 U.S. at 257, 82 S.Ct. at 1348. The Supreme Court held that the federal policy favoring arbitration of labor disputes, *see, e.g., United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), mandated that the breach of contract claim be adjudicated by way of arbitration, not the courts. *Drake Bakeries,* 370 U.S. at 264, 82 S.Ct. at 1352.

The same rule of law mandates arbitration of Local 2's first and second causes of action. The arbitration provision of the Compact is equally as broad as that of *Drake Bakeries,* and therefore encompasses the breach of contract claim. The policy applied in *Drake Bakeries* of referring the claim to arbitration to the exclusion of the courts applies here to Local 2's claims.

Both Local 2 and WMATA attempt to distinguish *Drake Bakeries* by underscoring the fact that arbitration in *Drake Bakeries* was voluntary, pursuant to a collective bargaining agreement, not statute, while here the arbitration provisions are statutorily prescribed. Both seem to intimate that the policy favoring arbitration is of greater

of three persons, one appointed by the Authority, one appointed by the labor organization representing the employees, and a third member to be agreed upon by the labor organization and the Authority.... The term "labor dispute" shall be broadly construed and shall include any controversy concerning wages, salaries, hours, working conditions, or benefits including health and welfare, sick leave, insurance or pension or retirement

provisions but not limited thereto, and including any controversy concerning any differences or questions that may arise between the parties including but not limited to the making or maintaining of collective bargaining agreements, the terms to be included in such agreements, and the interpretation or application of such collective bargaining agreements and any grievance that may arise and questions concerning representation.

force when the parties themselves agree to arbitration, than where the arbitration process is imposed upon them.

That distinction is of no import. If anything, it runs contrary to the position that the parties propose. If an arbitration provision voluntarily arrived at by consent of the parties, such as that in *Drake Bakeries,* can divest this Court of jurisdiction, then certainly a compulsory arbitration process mandated by Congress should do no less. In any event, the distinction becomes unimportant in light of the legislative history indicating that Congress enacted the Compact's compulsory arbitration provision precisely because the parties desired it. *OPEIU,* 552 F.Supp. at 631–32; Senate Report at 7. In that respect, the Compact's arbitration provision is as voluntary as that of *Drake Bakeries.* Thus, the distinction made by the parties in no way negates the analogy to the situation in *Drake Bakeries* under the Taft-Hartley Act.

An even closer analogy can be drawn from the Compact to the RLA, which under certain circumstances also requires compulsory arbitration. While "major" disputes, which arise in the course of bargaining toward the formation of future collective bargaining agreements, are subject only to mediation, "minor" disputes are subject to compulsory arbitration before the National Railroad Adjustment Board. *Elgin, Joliet & Eastern Railway Co. v. Burley,* 325 U.S. 711, 720–21, 65 S.Ct. 1282, 1288–89, 89 L.Ed. 1886 (1945). A minor dispute under 45 U.S.C. § 153 First (i), "contemplates the existence of a collective agreement already concluded . . . . The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation." *Elgin,* 325 U.S. at 723, 65 S.Ct. at 1290.

For minor disputes the compulsory arbitration procedures before the Adjustment Board are exclusive. *Andrews v. Louisville & Nashville Railroad Co.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972); *Transportation-Communication Employees Union v. Union Pacific Railroad Co.,* 385 U.S. 157, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966); *Slocum v. Delaware, Lackawanna & Western Railroad Co.,* 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950). *Andrews* and *Slocum* both held that courts lack jurisdiction over minor disputes which fail to meet the jurisdictional prerequisite of first exhausting remedies before the Adjustment Board.

A suit for breach of contract is a minor dispute under the RLA. *Andrews,* 406 U.S. at 321–22, 92 S.Ct. at 1563–64; *Bangor and Aroostook Railroad Co. v. Brotherhood of Locomotive Firemen and Enginemen,* 442 F.2d 812, 818 & n. 4 (D.C.Cir.1971). That conclusion follows readily from the notion that a suit alleging breach of contract is a grievance growing out of "the interpretation or application of agreements." 45 U.S.C. § 153 First (i). Thus a breach of contract claim under the RLA can be resolved only by the compulsory arbitration process of the Adjustment Board.

A breach of contract claim under the RLA is easily analogized to such a claim made under the Compact. Both statutes provide for compulsory arbitration of such claims, since both statutes invoke the compulsory arbitration process for grievances calling for the interpretation or application of collective bargaining agreements. *Compare* section 66(c) of the Compact ("interpretation or application of . . . collective bargaining agreements") *with* 45 U.S.C. § 153 First (i) ("interpretation or application of agreements"). Therefore, the principle governing the exclusivity of the arbitration process in the realm of the RLA is properly extended to the Compact.

In sum, an examination of the Compact, its legislative history, the Taft-Hartley Act, and the RLA, indicates that the proper forum for the claims raised by Local 2 in the first two causes of action is that of section 66(c)'s arbitration board, and that as a result this Court lacks subject matter jurisdiction.

An appropriate Order accompanies this Memorandum Opinion.