**Luis AMADOR HERNANDEZ,**
**Plaintiff,**

v.

**Jorge CHAAR et al., Defendants.**

**Civ. No. 74–988.**

United States District Court,
D. Puerto Rico.

April 25, 1975.

Jesus Hernández Sánchez, Rio Piedras, P. R., for plaintiff.

Commonwealth of Puerto Rico, Dept. of Justice, Felipe Algarin, for defendants.

DECISION

TORRUELLA, District Judge.

This cause is before the Court pursuant to Plaintiff's action brought against Defendants under Section 1983 of the Civil Rights Act, Title 42, United States Code and its jurisdictional counterpart, Title 28 United States Code, Section 1343. Plaintiff seeks injunctive relief and monetary damages alleging political discrimination.

Plaintiff taught a course related to the repair of electrical appliances at the Camuy High School, which is a public high school under the jurisdiction of the Department of Education of the Com-

monwealth of Puerto Rico. He was employed by said agency on the basis of a yearly provisional contract. In June 30, 1974, when his last yearly contract expired without his reappointment for the 1974–75 school term, Plaintiff had been employed in this capacity for 2½ years. His non-renewal gives rise to the present controversy.

The issues presented by this case are principally factual in nature.

The Department of Education has an established procedure for filling provisional positions. Towards the end of the academic year, publicity is given to the existence of these positions, and thereafter, a schedule of interviews is established for prospective candidates. The Regional Director of the Department of Education then names a committee to carry out these interviews and make recommendations as to the candidates. These recommendations go to the Regional Director first, who then transmits it with his recommendation to the Assistant Secretary for Vocational and Technical Education for final action. In practice the recommendation of the interviewing committee is the final decision as the Regional Director usually accepts it and adopts it as his own, and the Assistant Secretary in turn follows the recommendation of the Regional Director. Although the actual appointment is made by the Secretary of Education, it is the Assistant Secretary who handles the mechanics of this procedure.

Sometime in late Spring, 1974, notice was circulated to the effect that interviews would be carried out for candidates to occupy positions for the 1974–75 school year. Among the positions included was that being held down by Plaintiff at the time, the teaching of electrical appliance repair at Camuy High School. The Regional Director for the Arecibo School District, which includes the Municipality of Camuy, Defendant Jorge Chaar (hereinafter called Defendant Chaar), appointed an interviewing committee composed of Mrs. Carmen L. Rodríguez, industrial coordinator for the Arecibo District, Mr. Antonio Pérez Meléndez, general supervisor for vocational training and technique in the Department of Education, and Mr. Alejandro Luis Olivos, director of the Arecibo Vocational High School and representative of the superintendent of schools for Arecibo and Camuy.

On June 14, 1974 this committee conducted interviews of prospective candidates for the position here in question as well as other positions then open for the coming academic year. Plaintiff was among the applicants for the position of teacher of repair of electrical appliances. Mr. Indalecio Morales, a teacher of the general electricity course at Hatillo High School, was also an applicant for said post.[1]

At the time of the interview Plaintiff had a high school diploma and two years of college, including 30 credits in vocational training. He did not have a trade license but had worked in the industry 5½ years. Mr. Morales had a high school diploma but no college education. However, he had a master electrician's license and 26 years' experience in the field.

After the interview of these candidates, they were scored by the Committee. Plaintiff and Mr. Morales received equal scores. The Committee then voted to recommend Mr. Morales to occupy the electrical appliance post.[2]

Thereafter, on June 20, 1974, part of the interviewing committee, Mr. Ruiz Olivo and Mrs. Rodríguez, met with Defendant Chaar in his office together with Mr. Arnaldo Rivera, Superintendent of Schools in Camuy, who had been on vacation during the interviews. At

---

1. The interviewing committee considered both Plaintiff and Mr. Morales as applicants for the electrical appliance course.

2. The vote was not unanimous. Mr. Ruiz Olivo voted for Plaintiff, while Mrs. Rodríguez and Mr. Pérez Meléndez voted for Mr. Morales. Those that voted for Mr. Morales were persuaded by his occupational experience.

this meeting Defendant Chaar confirmed the Committee's recommendation regarding the candidates, including that for the teaching of electrical appliances. Defendant Chaar also called the other committee member, Mr. Pérez Meléndez, to confirm his recommendation.

On the basis of this recommendation and a study of the accompanying documents, Defendant Chaar endorsed the appointment of Mr. Indalecio Morales to teach the repair of electrical appliances. This recommendation was forwarded to the Assistant Secretary of Education for Vocational and Technical Education, Defendant José Lema Moya, who reviewed the candidates' records and approved the Committee's report. Thereafter, the matter followed the internal Department procedure for the final appointment by the Secretary of Education, Defendant Ramón A. Cruz, who simply named Mr. Morales on the basis of the recommendation that came before him through the procedure previously described herein.

■ It is clear that Plaintiff, a provisional non-tenured employee, did not have a "property" interest of such nature as to entitle him to procedural due process as regards his non-retention. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1971). Additionally, we are not here dealing with a situation in which charges were filed against an employee, or where such stigma attaches to his non-renewal of such nature as to foreclose the possibility of other employment, situations which might be considered as tantamount to deprivations of "liberty." Board of Regents v. Roth, supra, at page 573, 92 S. Ct. 2701.

Thus, we must determine whether the proven facts establish a violation of Plaintiff's free speech and association rights as protected by the First Amendment of the Constitution of the United States. Perry v. Sinderman, 408 U.S. 593, 597–598, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

■ The credible evidence is not helpful to Plaintiff in this respect. Although the facts show that Plaintiff's replacement was a member of the Popular Democratic Party as well as Defendants Ramón A. Cruz and Chaar, which could possibly raise a presumption of political motivation in the actions complained of (See Esther Pedroza v. Celeste Benítez, Civil Number 594–73, decided March 21, 1975; Báez Cancel v. Rivera Pérez, 100 D.P.R. 982 (1972); such a presumption, if applicable to the present controversy, has been clearly rebutted by Defendants. In the first place, the interviewing committee which made the initial [3] recommendation on behalf of Mr. Indalecio Morales, had reasonable grounds on which to base its recommendation. It is not the function of this Court to substitute its judgment for that of this Committee, particularly when, interestingly enough, this Committee is not a party defendant to this suit. We do not consider this to be an irrelevant oversight in view of the important function that this Committee performed in the appointment process. Additionally, there is no believable proof [4] that this Committee acted out of political motivation.

After the initial action by the Committee, the other members of the Department of Education's hierarchy who participated in the appointment process, as a practical matter merely concurred in the action that had already been put in motion by the Committee. Defendant Chaar confirmed the Committee's report and after a cursory perusal, passed it on to the next rung in the administrative ladder. Evidence presented by Plaintiff to the effect that Defendant Chaar knew of Plaintiff's political affiliation

3. And in a real sense the most important one.

4. We do not credit any testimony to the effect that any Committee member had any knowledge of either Plaintiff's of Mr. Morales' political affiliation at any time material to this case.

was denied by him. Said denial is credited by the Court in view of the surrounding circumstances. Continuing upwards in this hierarchy, we find that the person who in practice if not in law had the final say, Defendant Lema Moya, was politically unaffiliated and had no knowledge of Plaintiff's political affiliation. Finally, Defendant Cruz acted on Defendant Lema Moya's recommendation without any additional personal involvement.[5]

It is thus clear that Plaintiff has failed to prove that his non-renewal was politically motivated. We must therefore dismiss the Complaint.

It is so ordered.

See also, D.C., 380 F.Supp. 445.

---

5. It can hardly be expected that the head of such a large Agency would go into any further detail on such a matter.