Gilberto COLON VELEZ, Plaintiff,

v.

Mrs. Edna SANTIAGO de HERNANDEZ, Director of the Office of Civil Defense of the Commonwealth of Puerto Rico, Defendant.

Civ. No. 74–1207.

United States District Court,
D. Puerto Rico.

Sept. 8, 1977.

Jesús Hernández Sánchez, Río Piedras, P.R., for plaintiff.

Arturo Díaz, Asst. Dist. Atty., San Juan, P.R., for defendant.

## OPINION AND ORDER

PESQUERA, District Judge.

Plaintiff filed the instant action under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1343, 1331 and 1332 requesting declaratory and injunctive relief together with money damages for defendant's alleged unconstitutional actions in dismissing plaintiff from his job for political reasons and without affording him hearing or prior notice. It is thus alleged that defendant, in so acting, violated plaintiff's rights under the First and Fourteenth Amendments to the Constitution of the United States.

Defendant contends that the termination of plaintiff's employment was the result of a reduction-in-force due to budgetary problems and internal adjustment by the agency to the same.

After having held a hearing in the present case wherein evidence was presented by both parties and questions of law amply discussed, and upon due consideration of such oral and documentary evidence together with the questions of law presented herein, this Court makes the following

### Findings of Fact

1. Plaintiff, Gilberto Colón Vélez was employed in the Office of Civil Defense of the Commonwealth of Puerto Rico as Coordinator of Zone 7 at Humacao, Puerto Rico. Said appointment was effected on a probationary basis.

2. On August 1, 1972 and pursuant to the provisions of Circular No. 126 of the Office of Personnel of the Commonwealth of Puerto Rico, plaintiff was extended an appointment as Executive Officer I on a temporary basis. Said appointment was not to exceed one year, as provided in the aforementioned Circular.

3. Plaintiff is a member of the New Progressive Party and defendant Edna Santiago is a member of the Popular Democratic Party.

4. As a result of the general elections held on November 4, 1972 the Popular Democratic Party came into power and consequently, on or about January 2, 1973 defendant was appointed Director of the Civil Defense of Puerto Rico.

5. Shortly after taking office, defendant received a memorandum from the governor of Puerto Rico wherein she was entrusted to review the budgetary situation of the agency with the purpose of determining the financial soundness of the same for the fiscal year 1972–73.

6. Following the aforementioned instructions, defendant conducted a detailed financial study of the agency and the same disclosed a considerable projected deficit unless immediate austerity measures were taken.

7. In order to avoid closing the fiscal year with a budgetary deficit, defendant commenced taking various administrative measures including the dismissal of employees holding positions on a temporary basis. (See plaintiff's exhibit 2)

8. On February 27, 1973 and as a result of the critical budgetary situation prevailing in the agency, defendant forwarded a letter to plaintiff, terminating his employment effective March 15, 1973.

9. By a letter of April 2, 1973, forwarded by plaintiff to Mr. John E. Davis, Director of the Defense Civil Preparedness Agency in Washington, D.C., a series of complaints were brought to Mr. Davis' attention by plaintiff herein. Among other things, plaintiff stated that defendant had required that all employees of the Civil Defense in Puerto Rico had to resign from their positions in any political parties.

10. On April 20, 1973, Mr. Davis answered plaintiff's letter, indicating in part that defendant's actions in requiring Civil Defense employees to refrain from partisan political activities was consistent with applicable provisions of the Defense Civil Preparedness Agency regulations.

11. At no time subsequent to plaintiff's termination of employment and up to the holding of a hearing in the present case has defendant appointed any other person to occupy the position held by plaintiff on a temporary basis.

In view of the foregoing Findings of Fact, this Court makes the following

### Conclusions of Law

Jurisdiction of this Court has been properly invoked under 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

We will first address plaintiff's claim in which he avers that he was dismissed for political reasons in violation of his First Amendment rights.

■ Apart from defendant's prohibition against active partisan political activity by Civil Defense employees, we have been unable to find evidence which might have been deemed indicative of political discrimination in the instant case. The aforementioned prohibition, in and by itself, was not established as a motive or catalyst for dismissal in this action. Moreover, it was stated to be "consistent" with Civil Defense policy. (See our Finding of Fact No. 10)

Plaintiff, in his memorandum of law insists that there is an "inference" or a "presumption" that political discrimination was the motive behind his dismissal. We disagree. We may not infer political discrimination from the mere fact that there was a change of administration, nor from the fact that plaintiff and defendant belong to different political parties.

In the instant case, defendant proved that there were budgetary problems in the agency, and that a series of dismissals had to be effected as a result thereof.[1] We have found no proven relationship between plaintiff's political activity and the termination of his employment. Accordingly, no violation of plaintiff's First Amendment rights was occasioned by the dismissal.

It is further contended that plaintiff's termination was effected without prior notice or hearing, and thus in violation of the Due Process Clause. The Supreme Court has advanced the pertinent framework for the resolution of a due process claim such as presented herein. The initial determination is whether the plaintiff has been deprived of "interests encompassed by the Fourteenth Amendment's protection of liberty and property". *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). If such a deprivation has occurred, the remaining question is "the nature of the process that is due". *Morrisey v. Brewer,* 408 U.S. 471, 484, 92 S.Ct. 2593, 2602, 33 L.Ed.2d 484 (1972); *Mathews v. Elridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Wolff v. McDonnell,* 418 U.S. 539, 560–72, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

---

1. Plaintiff argues that the apportionment of federal funds for the agency dissipated any budgetary problem that would require dismissals. However, he offered no evidence to support this contention, except for the submission into evidence of documents pertaining federal funds received by the agency. We need not enter into judicial evaluation of the allocation of funds in a state administrative agency. Such management is left to administrative expertise. There is no reason to believe that said funds were not allocated as required by law, following federal guidelines.

■ The Supreme Court has observed that the Constitution itself did not create property interests, but only extended protection to interests that already exist and whose "dimensions are defined by existing rules or understandings that stem from an independent source such as state law". *Board of Regents v. Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709. Thus, while there is no constitutional right to public employment as such,[2] a property interest protectable under the Fourteenth Amendment can be created by a specific statutory or contractual entitlement, by implied contract or by the "common law of a particular industry or a particular plant". *Perry v. Sinderman,* 408 U.S. 593 at 601–602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972) quoting *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 579, 80 S.Ct. 1347, 4 L.Ed.2d 1409.

■ Plaintiff alleges that Circular 126, which was originative of the extension in his appointment, entitled him to employment for a term of one year. It is thus averred that he had an expectancy of continuous employment for such a term, and that such expectancy was consolidated into a property right which required procedural protection. This is not so. Circular 126 provides in the pertinent part:

> "The general authorization in force limits posts to a maximum 3 month duration . . .
>
> It is the purpose of this Circular to fully delegate in the agencies the creation, classification and appointment of provisional employees in transitory positions *not to exceed one year.*" (emphasis supplied)

The administrative policy behind Circular 126 is explained on the face of the document:

> "Reality has demonstrated that, in the majority of instances, the three-month duration for provisional appointments is insufficient and the agency has to resort to the appointment of other provisional employees with the concomitant problem of training . . . ." (our translation)

It is thus clear that pursuant to Circular 126, employment on a provisional basis may have a maximum duration of one year without further appointment. Said one year period is not a contracted term of employment. It is a maximum term permitted as a guideline for provisional employees. Thus, plaintiff can allege no expectancy of employment for such a term.

Plaintiff herein was never made a permanent employee under the competitive service. He was always a provisional employee, being the period of his employment indefinite, with the aforestated maximum duration of one year. As an irregular employee under 3 LPRA 711e, he was specifically excluded from the procedural protections provided in 3 LPRA 671. Moreover, the pertinent regulations pertaining administrative dismissals contained in 3 R. & R.P.R. 647–204 provide that in reduction-in-force dismissals, provisional employees shall be discharged before any other employee. Thus, there were no property rights granted by local law which would have required procedural safeguards. Furthermore, we have been unable to find any other contractual expectancy or implied promise of continuous employment in the present case. Cf. *Castillo v. Alvarez de Choudens,* Civ.No. 75–908 (DCPR) decided on April 22, 1977; *Laracuente v. P. R. Ports Authority,* Civ.No. 74–629 (DCPR) decided on January 27, 1975; *Rojas v. Guzmán,* Civ.No. 75–63 (DCPR) decided on January 10, 1977.

■ Finally, although not specifically alleged in the complaint, we note that plaintiff's liberty rights were not impaired in any manner by his termination, as the only reason given for the same was of a fiscal and budgetary nature; there could certainly be no stigmatizing effect as a result thereof. *Bishop v. Wood,* 424 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

Plaintiff did not have property interests which required a prior hearing or notice. Cf. *Slochower v. Board of Education,* 350

---

2. *Board of Regents v. Roth, supra,* at 578, 92 S.Ct. 2701.

U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); *Wieman v. Updegraff,* 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); *Connell v. Higginbotham,* 403 U.S. 207, 90 S.Ct. 1865, 26 L.Ed.2d 288 (1971). His liberty interests were not impaired. Accordingly, the present case is hereby DISMISSED, and the Clerk of the Court is ordered to enter judgment accordingly.