Eligio CASTRO and Rafael Diaz Diaz, Plaintiffs,

v.

UNITED STATES of America, Federal Deposit Insurance Corp., in its capacity as a corporation, William Isaac, Defendants.

Civ. No. 83–3001(PG).

United States District Court, D. Puerto Rico.

April 6, 1984.

Eligio Castro, pro se.

Osvaldo Carlo Linares, Asst. U.S. Atty., San Juan, P.R., Arthur L. Beamon, Ingeborg G. Chaly, MaryBeth Triano, Washington, D.C., for defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

This case has a long and convoluted history; the present amended complaint is the tenth in a series of suits, by one or both *pro se* plaintiffs, against the Federal Deposit Insurance Corporation ("FDIC").[1]

---

1. *Eligio Castro v. FDIC, et al.,* No. 83–107 RA (D.P.R. May 24, 1983) Order granting defendants' Motion to Dismiss as to all individual defendants, except the FDIC, for lack of personal jurisdiction under the Freedom of Information Act and the Privacy Act, and as to the FDIC for insufficient service of process.
*Eligio Castro v. FDIC, et al.,* No. 83–1465 (1st Cir. August 30, 1983) Order affirming District Court's dismissal as to individually named defendants for lack of personal jurisdiction; appeal on service of process rendered moot by filing of subsequent suit; denied appellant's mo-

tions to order trial by jury, to disqualify the judges of San Juan, to have an initial hearing *en banc,* and to see case on brief of appellant. *Eligio Castro v. FDIC, et al., cert. denied* — U.S. ——, 104 S.Ct. 402, 78 L.Ed.2d 343 (1983). Petition for rehearing denied, — U.S. ——, 104 S.Ct. 561, 78 L.Ed.2d 732 (1983).
*Rafael Díaz Díaz and Eligio Castro v. FDIC, et al,* No. 83–1123 TR (D.P.R.). On September 30, 1983, the Court dismissed the action because it did "not have personal jurisdiction over the defendants or subject matter jurisdiction as to the

This and all previous actions appear to arise out of the FDIC's failure to renew plaintiffs' temporary appointments with the FDIC. Plaintiffs' amended complaint is based on a variety of disparate legal theories: The Federal Tort Claims Act; Title VII of the Civil Rights Act of 1964; the Age Discrimination in Employment Act ("ADEA"); 42 U.S.C. § 1983; the Civil Service Reform Act of 1978; 28 U.S.C. § 1331; and the First, Fifth and Fourteenth Amendments to the United States Constitution. Plaintiffs also seek a Declaratory Judgment upon the constitutionality of 5 U.S.C. §§ 3301, 3302, 3304 and 7511.[2]

Plaintiffs' application for a TRO was denied on February 21, 1984, and a hearing was held on plaintiffs' request for a preliminary injunction of February 24, 1984. That injunction was also denied in our Opinion and Order entered on March 27, 1984. The matter is presently before the Court on defendants' Motion to Dismiss and plaintiffs' opposition thereto.

### Findings of Fact

1. Defendant FDIC is a corporation chartered under the laws of the United States of America—its chief function being the insurance of bank deposits and the supervision and examination of state-chartered insured banks which are not members of the Federal Reserve System. When appointed by the Comptroller of the Currency or authorized state banking Commissioners, the FDIC also acts as receiver for closed banks. 12 U.S.C. §§ 1811–1831d (1980 & Supp.1982).

2. Both plaintiffs were born in Puerto Rico.

3. Both plaintiffs held a series of successive, finite, long-term, temporary, ex-

---

multiple, vague, conclusory and unclear causes of action in this case."

*Rafael Díaz Díaz and Eligio Castro v. FDIC, et al,* No. 83–1890 (1st Cir.). On February 24, 1984, the Court granted defendants' Motion for Summary Disposition and affirmed the District Court's decision, holding "that the FDIC and most individual defendants were not properly served, the complaint, even as amended, made claims as to which no subject matter jurisdiction existed or, failed to state a basis upon which relief could be granted."

*Eligio Castro and Rafael Díaz Díaz v. United States and FDIC,* Civil Action No. 83–2296 GG. Motion for TRO filed on November 2, 1983; denied by Order dated November 4, 1983. "The specific facts alleged in said motion do not reveal that immediate or irreparable harm will ensue before defendants can be heard in opposition."

*Eligio Castro and Rafael Díaz Díaz v. United States and FDIC,* Civil Action No. 83–2296 GG, (November 9, 1983) Order dismissing plaintiffs "prolix, fifty-six page complaint which contains citations of cases, tables, legal theories, legal arguments and other evidentiary matters and statements that are not consistent with the format of a complaint." Case dismissed without prejudice provided plaintiffs filed a new complaint in full compliance with Rule 8 of the Federal Rules of Civil Procedure.

*Eligio Castro and Rafael Díaz Díaz v. United States and FDIC,* Civil Action No. 83–2296 GG. On November 14, 1983, plaintiffs filed a Motion for a TRO, a Preliminary Injunction and a Declaratory Judgment. On November 22, 1983,

the Court denied the motions as moot since judgment had been entered dismissing the underlying case.

*Eligio Castro v. United States of America and FDIC,* No docket number; received and tendered by Court on November 15, 1983. Plaintiff filed these actions against the U.S. and FDIC seeking Declaratory Judgment and damages for $3,593,000.00, $3,591,000.00, $3,596,000.00, and $3,592,000.00, respectively. Suit was brought pursuant to the Federal Tort Claims Act, Title VII, the Age Discrimination in Employment Act, 42 U.S.C. § 1983, the Civil Service Reform Act, the First and Fifth Amendments to the U.S. Constitution, as well as 28 U.S.C. § 1331. These cases were subsequently withdrawn by plaintiff Castro.

2. With respect to plaintiffs's request for a ruling on constitutionality, where possible, a court must construe statutes to avoid constitutional difficulties. *United States v. Montijo,* 424 F.2d 207, 208 (1st Cir.), *cert. denied,* 400 U.S. 836, 91 S.Ct. 74, 27 L.Ed.2d 69 (1970). Furthermore, plaintiffs' challenge to the constitutionality of the regulatory scheme providing for excepted appointments in federal employment is analogous to challenges regarding the status of probationary employees in government service, and in that context courts have held that the constitutionality of those statutes is not subject to successful challenge. *See Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974); *Smith v. Lehman,* 689 F.2d 342, 345 (2d Cir. 1982), *cert. denied,* 459 U.S. 1173, 103 S.Ct. 820, 74 L.Ed.2d 1018 (1983); *Harrington v. United States,* 673 F.2d 7, 10 (1st Cir.1982).

cepted appointments with the FDIC in its San Juan Liquidation Office.

4. Plaintiff Castro was employed first as a translator and then as a bond clerk, from August 28, 1978, until the expiration of his last appointment on November 10, 1982.

5. Plaintiff Díaz Díaz was employed as a collector from February 12, 1979, until the expiration of his last appointment on December 12, 1982.

6. The FDIC's Liquidation Graded positions have been designated by the Office of Personnel Management ("OPM") as Schedule A in the excepted service pursuant to 5 U.S.C. §§ 3301, 3302 and 5 C.F.R. § 213.-3133.

7. These temporary liquidation appointments do not confer competitive status, nor do they lead to career or career-conditional appointments without some further examination or qualification.

8. Liquidation Graded positions are temporary in nature because the positions are concerned with the work of liquidating the assets of and managing the affairs of closed banks. During an ongoing liquidation staffing needs are frequently reassessed and reductions are periodically necessary.

9. Individuals employed by the FDIC as Liquidation Graded appointees are apprised of their temporary status when initially hired, and the expected duration of their appointments is specifically designated on Standard Form 50.

10. During his last appointment plaintiff Castro was an LG–5 Step 4.

11. During his final appointment plaintiff Díaz Díaz was an LG–11 Step 2.

12. Neither plaintiff qualifies as a preference eligible under 5 U.S.C. § 2108.

13. Plaintiff Castro's successful completion of a civil service examination does not in and of itself confer competitive status upon him.

## Conclusions of Law

With this background in mind, the Court will now consider each of the issues presented by defendants' Motion to Dismiss.

### A. *Federal Tort Claims Act*

Plaintiffs in this action collectively seek $7,196,000 in damages under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), 2671–2680, for alleged violations of their statutory and constitutional employment rights. Assuming *arguendo* that plaintiffs have such statutory and constitutional employment rights, the United States cannot be made liable under the FTCA for claims that arise from a breach of federal law, *Birnbaum v. United States*, 588 F.2d 319, 322 (2d Cir.1978), ("recovery under the [FTCA can] *only* be predicated upon ... a state tort cause of action."), or for constitutional torts. *Id.* at 327 ("We do not believe that the [FTCA] comprehends *federal constitutional torts* in its reference to the 'law of the place' under § 1346(b)."). Furthermore, since plaintiffs' employment claims are not cognizable under the FTCA, it is not necessary to reach the issue of whether plaintiffs exhausted their administrative remedies. *Steinagel v. Jacobson*, 507 F.Supp. 288, 290 (S.D.Ohio 1980); *Wham v. United States*, 458 F.Supp. 147, 151 (D.S.C.1978); *Young v. United States*, 498 F.2d 1211, 1218 (5th Cir.1974). The *Steinagel* court emphatically stated that "it is 'beyond question' that claims based upon wrongful discharge under a contract of federal employment are 'wholly alien' to the remedy provided for tortious conduct under the [FTCA]." 507 F.Supp. at 290. Rather, claims under the FTCA must be ones recognized by the law of the *state* in which the claims arose. 28 U.S.C. §§ 1346(b), 2674. Plaintiffs have alleged no state law violations in their amended complaint, and without any allegation of a cognizable tort there can be no relief, and plaintiffs' FTCA actions are therefore dismissed for lack of subject matter jurisdiction.

### B. *Title VII*

Plaintiffs allege in their amended complaint that the FDIC's failure to renew

their temporary appointments constitutes an act of discrimination based on national origin. They rely on Section 717 of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16 as a jurisdictional predicate for suit. Section 717 proscribes federal employment discrimination and establishes an administrative and judicial enforcement system. Section 717(c) permits an aggrieved employee to file a civil action in a federal district court to review his claim of employment discrimination. However, the Supreme Court of the United States has made it clear that "attached" to the right of filing a civil action "are certain preconditions." *Brown v. G.S.A.*, 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976). Specifically, the Court stated in *Brown v. G.S.A.* that "[i]nitially, the complainant *must* seek relief in the agency that has allegedly discriminated against him." *Id.*, (emphasis added). In other words, exhaustion of administrative remedies is a jurisdictional pre-requisite to bringing an employment discrimination suit under Section 717(c). Regulations promulgated pursuant to Section 717(b) describe in detail the administrative procedures available to a charging party. 29 C.F.R. Part 1613.

■■■ Although plaintiffs, on one hand, rely on Section 717 of Title VII [3] as a basis for this Court's jurisdiction, they maintain, on the other hand, that they are not, by virtue of being excepted federal employees, entitled to the benefits of this provision. Their conclusion is correct but not for the reason they claim. "Title VII's coverage of executive agency employees is comprehensive, reaching excepted service as well as competitive service employees." *Kizas v. Webster*, 707 F.2d 524, 542 n. 95 (D.C. Cir.1983). *See also* Transcript pp. 12–13. Plaintiffs' Title VII claims are defective because neither plaintiff exhausted his ad-

ministrative remedies. Plaintiff Castro never contacted an EEO counselor regarding his allegations of national origin discrimination, nor has he ever filed a formal complaint of employment discrimination. (Exhibit E) [4] This is so despite the fact that he was apprised of his rights under Title VII as early as October 14, 1982. (Exhibit V) Plaintiff Castro, therefore, consciously chose not to pursue his administrative remedies. His total and deliberate bypass of the regulations governing the initiation of a Title VII suit cannot be excused and therefore bars his present court action. *Brown v. G.S.A., supra; Kizas v. Webster, supra.* Although plaintiff Díaz Díaz did initiate an age discrimination complaint (Exhibit F), none of his allegations made reference to discrimination on the basis of national origin. His charge of national origin discrimination is foreclosed because his judicial complaint does not parallel his earlier administrative charge. *Ong v. Cleland*, 642 F.2d 316, 320 (9th Cir.1981) ("The failure to raise an issue administratively subverts the procedures and policies of Title VII and justifies precluding its presentation in federal court."). *See also Siegel v. Kreps*, 654 F.2d 773, 778 (D.C.Cir.1981); *Ettinger v. Johnson*, 518 F.2d 648 (3d Cir.1975).

### C. *Age Discrimination in Employment Act*

■■■ Plaintiffs also allege that their nonrenewal constitutes age discrimination. Under the Age Discrimination in Employment Act, 29 U.S.C. § 633a(d), a civil action is precluded unless the claimant first files an age discrimination complaint with the EEOC or notifies the EEOC of his intention to file a civil action at least 30 days prior to instituting suit. Since neither plaintiff in this action established his compliance with

---

**3.** Plaintiffs also contend that they may pursue, additionally or alternatively, their employment claims directly under the Constitution. This argument is foreclosed by precedent since it is settled law that Section 717 provides the exclusive judicial remedy for claims of discrimination in federal employment. *Brown v. G.S.A.*, 425 U.S. at 835, 96 S.Ct. at 1969; *Ray v. Nimmo*,

704 F.2d 1480, 1485 (11th Cir.1983); *Beeman v. Middendorf*, 425 F.Supp. 713, 715 (D.D.C.1977).

**4.** All exhibit references are to defendants' attachments to their Motion to Dismiss and sequentially alphabetized exhibits admitted during the preliminary injunction hearing.

the 29 U.S.C. § 633a(d) requirement of filing a notice of intent to sue with the EEOC, their age discrimination complaint must be dismissed. *Siegel v. Kreps,* 654 F.2d at 778 n. 16 (D.C.Cir.1981); *Montgomery v. Obear-Nester Glass Co.,* 15 FEP Cases 614 (E.D.Ill.1977).[5]

### D. *42 U.S. § 1983*

Beyond their Title VII and ADEA claims, plaintiffs also seek to recover under 42 U.S.C. § 1983. That action, however, is precluded by law. Section 717 of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16, is the exclusive judicial remedy available to a federal employee complaining about job-related discrimination. *Brown v. G.S.A.,* 425 U.S. at 835, 96 S.Ct. at 1969. Therefore, plaintiffs, as federal employees covered by Title VII, may not sue under any other federal statute. *Morris v. Washington Metropolitan Area Transit Authority,* 702 F.2d 1037, 1040 (D.C.Cir.1983) ("Absent a showing that Title VII provides inadequate protection for his or her rights ... a federal employee urging unlawful discrimination is confined to actions under that statute").

Furthermore, it has been held almost without exception that no action under § 1983 lies against *federal* officials acting pursuant to *federal* law. *See, e.g., District of Columbia v. Carter,* 409 U.S. 418, 424–25, 93 S.Ct. 602, 606, 34 L.Ed.2d 613 (1973) ("actions of the Federal Government and its officers are at least facially exempt from [§ 1983's] proscriptions."); *Soldevila v. Sec. of Agriculture of U.S.,* 512 F.2d 427, 429 (1st Cir.1975); *Askew v. Bloemker,* 548 F.2d 673 (7th Cir.1976); *Pugh v. IRS,* 472 F.Supp. 350 (E.D.Pa. 1979). Therefore, plaintiffs' allegations under 42 U.S.C. § 1983 are dismissed for failure to state a claim upon which relief can be granted.

### E. *Civil Service Reform Act*

Plaintiffs maintain that they were denied procedural due process when the FDIC refused to accord them a hearing after not renewing their temporary appointments. It is apparent from plaintiffs' pleadings that they misconceive the nature of the constitutional protections afforded. The Constitution itself does not create property interests; it only protects established entitlements. *Leis v. Flynt,* 439 U.S. 438, 441, 99 S.Ct. 698, 700, 58 L.Ed.2d 717 (1979) ("As this Court has observed on numerous occasions, the Constitution does not create property interests. Rather, it extends various procedural safeguards to certain interests 'that stem from an independent source such as state law'."). It is a well established rule of law that the right to procedural due process attaches under the Fifth Amendment only when there is governmental action adversely affecting a recognized property or liberty interest. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). *Goss v. López,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725; *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The threshold issue, therefore, is whether plaintiffs had a protected property or liberty interest such that their nonrenewal had to comport with procedural due process standards.

#### 1. *Property Interests*

Plaintiffs rely upon 5 U.S.C. § 3304a as establishing their alleged statutory employment rights. That section provides that:

(a) *An individual serving in a position in the competitive service under an indefinite appointment or a temporary appointment pending establishment of a register* (other than an individual serving under an overseas limited appointment or in GS–16, GS–17, or GS–18) acquires competitive status and is entitled

---

**5.** It should also be noted that at the time of his nonrenewal plaintiff Castro was only 39 years of age and therefore did not even meet the statutory age requirements of the ADEA. 29 U.S.C. §§ 631 and 633a. Transcript p. 37. Further, as with Title VII, the ADEA preempts judicial remedies based directly on the Constitution for claims of age discrimination in federal employment. *Purtill v. Harris,* 658 F.2d 134, 137–38 (3d Cir.1981).

to have his appointment converted to a career appointment, without condition, when—(1) he completes, without break in service of more than 30 days, a total of at least 3 years of service in such a position; (2) he passes a suitable noncompetitive examination; (3) the appointing authority (A) recommends to the Office of Personnel Management that the appointment of the individual be converted to a career appointment and (B) certified to the Office that the work performance of the individual for the past 12 months has been satisfactory; and (4) he meets Office qualification requirements for the position and is otherwise eligible for career appointment.

5 U.S.C. § 3304a (1970) (emphasis added).

By its terms § 3304a applies *only* to individuals serving "in the *competitive service* under an indefinite appointment *or a temporary appointment pending establishment of a register.*" As can be seen, § 3304a does *not* refer merely to an individual serving under a temporary appointment. Rather, it speaks of a "temporary appointment pending establishment of a register", a category of federal employment known as "TAPER" employment. *See* 5 C.F.R. Part 316, § 316.210. *See also,* transcript, pp. 27–29.

Neither plaintiff in this action may avail himself of § 3304a since neither one of them served in a competitive or a "TAPER" position entitling him to be converted to career employment.[6] As this Court has already noted, and plaintiffs have themselves admitted, plaintiffs had long-term temporary excepted appointments with the FDIC and were not in the competitive service.

■ Moreover, there is nothing in the terms of plaintiffs' employment contracts that could give rise to an "objective expectation of continued employment," *i.e.,* a

"property interest" required by *Board of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. at 2709 ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."); and *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). (Exhibits H, M, N, P, Q, U; Transcript pp. 9–31) The law is clear that a federal agency may decline to renew the contract of a nontenured employee for any reason provided that the reason is not constitutionally impermissible. *Fowler v. United States,* 633 F.2d 1258 (8th Cir.1980). In *Fowler,* the United States Court of Appeals for the Eighth Circuit correctly stated that "it is the well-recognized rule that federal employees in the excepted government service may be terminated at any time, without either a statement of reasons for discharge or adverse action appeal rights." *Id.* at 1262. A review of the record as a whole reveals no constitutionally impermissible reason for plaintiffs' nonrenewal. A contrary ruling, as urged by the plaintiffs, would violate the purpose of having fixed term appointments, would render the provisions of the Civil Service Reform Act superfluous and would subvert Congress' intent.

■ Plaintiffs' contention that they possessed a property interest in their temporary nontenured employment status is not sustained by the facts or the law. Although plaintiffs may have hoped to have their temporary appointments renewed, such hopes are not in and of themselves a property right and their frustration does not trigger adverse action hearing rights. *Board of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. at 2709; *Hall v. Swartley,* 461 F.Supp. 81, 84–85 (D.Idaho 1978). The per-

---

**6.** Despite plaintiff Castro's novel claim that he was in fact serving in the competitive service by virtue of having successfully completed the PACE examination, he was never certified nor appointed to the competitive civil service. Transcript pp. 9–10. Moreover, Castro's claim is contrary to his admission that neither him-

self, nor plaintiff Díaz, were in the competitive service. In their motion in opposition to defendants' motion to dismiss, plaintiffs state at p. 258: "plaintiffs had a long term excepted appointment with the FDIC and *were not in the competitive service.*" (Emphasis added)

sonal desires and unilateral expectations of the plaintiffs to continue indefinitely in their employment with the FDIC are not the equivalent of expectancy of reemployment in the contemplation of the law. It is clear that "just as there is generally no protected interest in keeping a particular job beyond a probationary period, *there is no recognized property right in a mere chance or expectation of being hired (or ... rehired)* by a particular employer or to a particular position." *Jolly v. Listerman,* 672 F.2d 935, 941 (D.C.Cir.1982) (emphasis added).

Procedural protections due federal employees affected by adverse actions are specified in Title 5, Section 7513. In order to be accorded the protections of this section, an individual must first qualify as an employee under Section 7511. Subsection (a)(1) thereof states that the term "employee" means—

(A) an individual in the competitive service who is not serving a probationary or trial period under an initial appointment or who has completed 1 year of current continuous employment under other than a temporary appointment limited to 1 year or less; and (B) a preference eligible in an Executive agency in the excepted service, and a preference eligible in the United States Postal Service or the Postal Rate Commission, who has completed 1 year of current continuous service in the same or similar positions....

5 U.S.C. § 7511(a)(1) (1978).

 Only federal employees in the competitive service or excepted employees who are also preference eligible are entitled to the "cause" protections of 5 U.S.C. § 7513. Plaintiffs in the instant action had long-term temporary excepted appointments with the FDIC and were not in the competitive service. (Exhibits H, M, N, O,

and P) Neither plaintiff qualified as a preference eligible as defined in 5 U.S.C. § 2108.[7] (Exhibits H and Q; Transcript p. 12) They are, therefore, not included in the definition of employee as set forth in Section 7511. Employees in the excepted service—other than preference eligibles—are simply not entitled to the benefits accorded those in the competitive service under the Lloyd-Lafollette Act, 5 U.S.C. § 7501, *et seq. Committee for Protection of First Amendment Rights of Department of Agriculture Employees v. Bergland,* 434 F.Supp. 314, 318 (D.D.C.1977), *aff'd,* 626 F.2d 875 (D.Cir.1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3012, 65 L.Ed.2d 1113 (1980).

Furthermore, the adverse action procedures spelled out in Title 5 do not apply to actions of nonrenewal upon expiration of appointment. *See Deans v. Department of Labor,* FMSR ¶ 5114 (June 1, 1983). *See also, Robles v. El Paso Community Action Agency, Project Bravo, Inc.,* 456 F.2d 189 (5th Cir.1972) (temporary, nontenured employee has no statutory right to be employed or to continued employment).

Plaintiffs, therefore, are not entitled to the substantive and procedural protections of Title 5, and nonrenewal of their temporary appointments does not qualify as an adverse action subject to appeal. No hearing is required when the duration of one's appointment or contract comes to an end. *Mittelstaedt v. Board of Trustees of the University of Arkansas,* 487 F.Supp. 960, 972 (E.D.Ark.1980) ("Employment for a definitive period terminates by its own terms at the end of that period"). Any property interest that plaintiffs may have had in their employment expired on the same day as their appointment. *Olson v. Trustees of California State Universities,* 351 F.Supp. 430, 433 (C.D.Cal.1972) (a one-year contract

---

**7.** 5 U.S.C. § 2108 provides, in pertinent part, as follows:

(3) "preference eligible" means—
(A) a veteran ...;
(B) ...;
(C) a disabled veteran;
(D) the unmarried widow or widower of a veteran...;

(E) the wife or husband of a service-connected disabled veteran...;
(F) the mother of an individual who lost his life under honorable conditions while serving in the armed forces...;
(G) the mother of a service-connected permanently and totally disabled veteran...

that must be renewed does not carry a reasonable expectation of re-employment, and the property interest expires on the same day as the contract); *Robles v. El Paso Community Action Agency, Project Bravo, Inc., supra.*

 In view of plaintiffs' temporary and finite appointments with the FDIC they had no legitimate claim of entitlement to continued employment beyond the expiration of their contracts. This Court has specifically held that provisional employees do *not* have property rights which are impaired by termination of their employment. *Colón Vélez v. Santiago de Hernández,* 440 F.Supp. 432 (D.P.R.1977); *Amador Hernández v. Chaar,* 392 F.Supp. 964 (D.P. R.1975). Furthermore, prior renewal and interim promotion are not tantamount to *de facto* tenure, nor do they amount to a quasi-contractual guarantee of permanent employment. Transcript pp. 18–19. *See Perkins v. Regents of the University of California,* 353 F.Supp. 618 (C.D.Cal.1973). Longevity alone does not create a due process protected property interest in continued employment. *See Bollow v. Federal Reserve Bank of San Francisco,* 650 F.2d 1093, 1099 (9th Cir.1981), *cert. denied,* 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982) (11 years); *McElearney v. University of Illinois at Chicago Circle Campus,* 612 F.2d 285, 290–91 (7th Cir.1979) (9 years); *LaPier v. Holliman,* 514 F.Supp. 692, 695 (N.D.Ga.1980), *citing Siler v. Brady Independent School District,* 553 F.2d 385, 387–88 (5th Cir.1977) (mere fact that teacher was rehired successive years does not create legitimate expectation that contract will be renewed). Thus, we conclude that plaintiffs had no property interest in their employment with the FDIC, and their nonrenewal did not have to comport with procedural due process standards.

### 2. *Liberty Interests*

 Plaintiffs also claim that they have a right to procedural due process because their nonrenewal allegedly constitutes a stigma calling into question their good names, honor and integrity and forecloses their future chances of employment in Puerto Rico. These allegations, however, fall far short of establishing the type of reputation damage contemplated by the due process clause. Case law has "set the boundary of liberty interests at accusations of 'moral turpitude', such as dishonesty or immorality—i.e., charges that do not reach this level of severity do not infringe constitutional liberty interests." *Bollow v. Federal Reserve Bank of San Francisco,* 650 F.2d at 1101. A record of non retention simply does not establish the kind of foreclosure of opportunities amounting to a deprivation of liberty. *Ventetuolo v. Burke,* 596 F.2d 476, 483 (1st Cir.1979), *quoting from Board of Regents v. Roth,* 408 U.S. at 574 n. 13, 92 S.Ct. at 2708 n. 13 ("mere proof ... that his record of nonretention in one job, taken alone, might make him somewhat less attractive to some other employers would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of 'liberty'."). There is no indication that the FDIC in any way damaged the plaintiffs' standing or reputation in the community; nor is there any suggestion that the FDIC imposed a stigma or other disability on the plaintiffs that foreclosed their freedom to take advantage of other employment opportunities.[8] Plaintiffs must demonstrate that defendants have caused them to suffer a stigma by disclosing false or derogatory information about them. *Gentile v. Wallen,* 562 F.2d 193, 197 (2d Cir.1977). With respect to plaintiff Díaz Díaz there is no indication whatsoever that any information pertaining to the nonrenewal of his appointment was ever made public by the FDIC. The Supreme Court has held that there can be no stigma when there is no public disclosure of the reason for discharge. *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074,

---

**8.** Assuming *arguendo* that plaintiffs had been stigmatized, they would only be entitled to a hearing to clear their names and not to get their jobs back. *See, Codd v. Velger,* 429 U.S. 624,

627, 97 S.Ct. 882, 883, 51 L.Ed.2d 92 (1977); *Board of Regents v. Roth,* 408 U.S. at 573 n. 12, 92 S.Ct. at 2707 n. 12.

2079, 48 L.Ed.2d 684 (1976). As to plaintiff Castro's allegation that he was stigmatized, even under the broadest conceivable interpretation of the letter Jack C. Pleasant, FDIC Director of Personnel, sent to the Honorable Baltazar Corrada (Exhibit R), it cannot be regarded as stigmatizing. In said letter, as explained in our Opinion and Order denying plaintiffs' motion for preliminary injunction, the Director of Personnel simply informs Puerto Rico's Resident Commissioner in Washington, D.C., that plaintiff Castro was being terminated because his *temporary appointment* was due to expire on November 10, 1982. On the contrary, the letter lends support to the FDIC's position that Castro was terminated simply because his appointment expired.

█ In view of the nature and terms of the plaintiffs' employment with the FDIC (long-term temporary excepted appointment and in light of the fact that excepted, nonpreference eligible employees do not have a property right in continued employment, due process protections are simply not triggered in this case. We agree with the District of Columbia Court of Appeals that

· If [an] aggrieved party is determined to have no protected property interest (e.g., job tenure) or in liberty (stemming from the circumstances surrounding the termination of employment), due process itself does not apply, and the party is left with only those procedural protections established by or otherwise binding upon the employing agency.

*Colm v. Vance*, 567 F.2d 1125, 1128 (D.C. Cir.1977), *citing Board of Regents v. Roth*, *supra*. Thus, because we find that plaintiffs have neither a protected property nor liberty interest, their claims based upon the Constitution are dismissed for failure to state claims upon which relief can be granted.

### F. *In Forma Pauperis: 28 U.S.C. § 1915(d)*

Defendants ask us to dismiss this case pursuant to 28 U.S.C. § 1915(d), which au-

thorizes a court to dismiss an *in forma pauperis* action if it finds that the same is frivolous or malicious. Although we agree with defendants that this case is both frivolous and malicious, we cannot dismiss the same pursuant to § 1915(d) because plaintiffs herein are not proceeding *in forma pauperis*.

However, we feel that some significance should attach to our conclusion that this case is frivolous and malicious. Plaintiffs' pleadings clearly establish that they can make no argument on the facts as alleged or the applicable law which would support their claim for relief. In their complaint, for example, plaintiffs have set forth confusing, conclusory and unsupported allegations of nebulous actions which in no way indicate that the FDIC's nonrenewal of their temporary appointments deprived them of their rights in any way. Dismissal with prejudice is, therefore, appropriate in this case. *Brown v. Califano*, 75 F.R.D. 497, 499 (D.D.C.1977).

It is proper for this Court to take judicial notice of official court records of other proceedings as an aid in determining whether this action should be defined as frivolous or malicious. *Carter v. Telectron, Inc.*, 452 F.Supp. 944, 953 (S.D.Tex. 1977). An investigation into plaintiffs' prior filings,[9] although extremely time consuming, has proven to be highly revealing and has allowed this Court to obtain the necessary overview of the plaintiffs' litigious history.

█ Plaintiffs have, in this action, made allegations virtually identical to allegations contained in previous suits. *Rafael Díaz Díaz and Eligio Castro v. FDIC, et al.*, Civil Action No. 83–1123 TR (D.P.R.1983), *aff'd*, No. 83–1890 (1st Cir.1984). These decisions are conclusive upon the plaintiffs and bar their identical action in this case. The prior dismissal for lack of subject matter jurisdiction is *res judicata. First Federal Savings & Loan Assn. of Puerto Rico v. Zequeira*, 305 F.Supp. 37 (D.P.R.1969); *Hicks v. Holland*, 235 F.2d 183 (6th Cir.),

---

**9.** See footnote 1, *supra*.

*cert. denied,* 352 U.S. 855, 77 S.Ct. 83, 1 L.Ed.2d 66 (1956). On December 23, 1983, United States District Judge Gilberto Gierbolini, of this Court, issued an Order denying plaintiff Castro's *in forma pauperis* application, noting that "petitioner had maliciously filed the complaint in this case and the filing of eight similar complaints before this court constituted an abuse of the judicial process." The instant action only strengthens the force of that conclusion.

■ Virtually all of plaintiffs' filings have been frivolous, devoid of merit, repetitive, and demonstrably vexatious. Plaintiffs have repeatedly requested relief to which they are simply not entitled. They have inundated this Court with a plethora of frivolous motions which amply demonstrate to this Court their contempt for the judicial process, *e.g.,* their demand for a jury trial when the law is clear that the relief sought is equitable and a jury trial unavailable; their Motion to Suppress Inauthentic and Irrelevant Evidence, in which they challenged the authenticity of a document which they had included as an exhibit in a prior action against the FDIC; their challenge and then acknowledgement of a signature of Eligio Castro on Exhibit C (Transcript pp. 41–43); their petition to disbar attorneys Triano, Chaly, Brooks and Carlo-Linares on the ground that they allegedly introduced evidence into the record of the preliminary hearing which was held on February 24, 1984, after the same had been rejected by the undersigned; their motion for a temporary restraining order to enjoin the FDIC from utilizing the services of the FBI to gain advantage in this case; their filing of a new set of interrogatories in clear disregard of our Order filed February 23, 1984, staying all discovery in this case pending resolution of dispositive motions filed by defendants; and so forth.

If this Court were unwilling to meet the challenge posed by such litigants, we would be abdicating our duty to protect the defendant from abuse, harassment, and exploitation. Moreover, these are not the common type of *pro se* litigants who would normally be entitled to more "solicitous and generous" consideration. To begin with, plaintiff Castro is currently a third-year law student at the University of Puerto Rico Law School, who boasts that when this case is ended he will be the "most knowledgeable lawyer in federal jurisdiction in all Puerto Rico...." Letter from Eligio Castro to Arthur Beamon of January 9, 1984, Exhibit T. Moreover, in view of plaintiffs' voluminous pleadings in the instant action, as well as prior suits, they may be deemed experienced *pro se* litigants who should be held to a higher standard than *pro se* novices. As in *Raitport v. Chemical Bank,* 74 F.R.D. 128, 133 (S.D.N.Y.1977) (citations omitted),

> [t]his is not a case involving an uneducated, naive plaintiff who may have inartistically stated a valid cause of action.... He comes before this Court wearing the cloak of a *pro se* applicant, and seeks to extract from us the solicitude ordinarily afforded one appearing without counsel. But this should not shield him from rebuke when merited. He is an intelligent, able and sophisticated litigant, who is no stranger to this Court.... Moreover, we are not to be manipulated by resourceful but meritless moves ... [which] serve only to distract us from important judicial business.

IT IS THEREFORE ORDERED that plaintiffs' action be and hereby is DISMISSED AS FRIVOLOUS AND MALICIOUS.

### G. *28 U.S.C. § 1651(a)*

■ Federal courts have the inherent power to enjoin litigants who use the courts as a stage for a personal vendetta of harassment or abuse. 28 U.S.C. § 1651(a). *See Ruderer v. United States,* 462 F.2d 897 (8th Cir.), *cert. denied,* 409 U.S. 1031, 93 S.Ct. 540, 34 L.Ed.2d 482 (1972). In the case at bar, this Court has been swamped by a torrent of frivolous and meritless claims. Plaintiffs have been undeterred by this Court, the First Circuit Court of Appeals and the United States Supreme Court, and there is no reason to believe that the mere dismissal of this action will be any more effective than prior dismissals.

Plaintiffs' correspondence with the FDIC, as well as their court submissions, attest to their relentless pursuit of frivolous litigation.

Although it is true that litigious affinity alone would not provide a sufficient basis for issuing an injunction against further suit, *Ruderer v. United States, supra,* at 899, "when it becomes clear that the courts are being used as a vehicle of harassment by a 'knowledgeable and articulate experienced *pro se* litigant' who asserts the same claims repeatedly in slightly altered guise, the issuance of an injunction is warranted." *Kane v. City of New York,* 468 F.Supp. 586, 590 (S.D.N.Y.), *aff'd without opinion,* 614 F.2d 1288 (2d Cir.1979). *See also, Ruderer v. United States, supra,* wherein the court held that when successive suits are filed in bad faith and in furtherance of a personal vendetta against the United States, then it is proper to issue an injunction. The Court finds that plaintiffs' vendetta against the United States and the FDIC has been repeatedly and vividly demonstrated.[10]

This Court finds substantial precedent for its authority to enjoin plaintiffs herein. The Court of Appeals for the First Circuit held in *Gordon v. U.S. Department of Justice,* 558 F.Supp. 618, that "it is proper and necessary for an injunction to issue barring a party ... from filing and processing frivolous and vexatious lawsuits." 558 F.2d 618 (1st Cir.1977). In *Gordon,* the court affirmed the district court's entry of an injunction against a litigant "who had filed complaints comprised of vituperative attacks against judges who had ruled against him; [and upheld] the lower court's refusal to allow a new complaint of a similar ilk to be filed." *Pavilonis v. King,* 626 F.2d 1075, 1078 (1st Cir.1980). *See also Rudnicki v. McCormack,* 210 F.Supp. 905 (D.R.I.1962), *appeal dismissed sub nom. Rudnicki v. Cox,* 372 U.S. 226, 83 S.Ct. 679, 9 L.Ed.2d 714 (1963) (court ruled that it had equitable and supervisory power to protect defendant from harassment and the court itself from the burden of processing frivolous and unimportant papers); *Rudnicki v. Department of Massachusetts Attorney General,* 362 F.2d 337 (1st Cir.1966) (Court of Appeals noted the existence of the injunction against the plaintiff and upheld the district court's denial of leave to file a new action). *But see Pavilonis v. King, supra.* Moreover, a court has gone as far as to hold that "[t]he subjecting of another to repeated, baseless and vexatious suits at law on some particular subject matter is, *without reference to other considerations,* a sufficient ground for the issuance of an injunction against the perpetrator." *Meredith v. John Deere Plow Co.,* 261 F.2d 121, 124 (8th Cir.1958) (emphasis added), *cert. denied,* 359 U.S. 909, 79 S.Ct. 586, 3 L.Ed.2d 574 (1959).

Defendants contend, and this Court agrees, that plaintiffs have demonstrated a pattern of behavior which displays a propensity—approaching compulsion—to file suit against the FDIC. In the hands of these persistent and calculated *pro se* litigants, a civil complaint has become a bludgeon, wielded indiscriminately against the FDIC. Although plaintiffs may well believe that their views of the Constitution and the law represent the truth, their repeated lawsuits must be objectively described as brought only to vex, harass, and annoy. Unless precluded from bringing further frivolous actions, it is an almost certainty that plaintiffs will continue to make similar groundless and vexatious claims in the future, "burdening this Court's already heavy caseload and obstructing the application of justice in more

---

**10.** In fact, plaintiff Castro has suggested that the vendetta will continue even after this case is dismissed. Castro stated in his offer of settlement that he will file a new suit against the FDIC under the Equal Pay Act and that his wife will file a Privacy Act action, also against the FDIC. Moreover, Castro has provided a schedule of press conferences that he will hold in the future to disclose information allegedly damaging to the FDIC. *See* Offer of Settlement sent by Eligio Castro to Arthur Beamon, Exhibit T. These "threats", as we choose to call them, bolster our finding that plaintiff Castro is engaged in a personal vendetta against the FDIC, and we refuse to provide him with a forum in which to continue his unmeritorious attacks.

meritorious causes." *Hill v. Estelle*, 423 F.Supp. 690, 695 (S.D.Tex.1976). As a matter of fact, in their "Notification of Valid Service of Process and Compliance with Court Order" (Exhibit S) plaintiffs maintain that "[w]hen a final decision is reached on these cases if the plaintiffs lose they will simply refile their claim and repeat the same process all over again until the court's doors are opened to them and due process is granted, for good or for bad." The time has come for the Court to exercise its power to enjoin the plaintiffs from pursuing this protracted litigation further. As the court in *Harrelson v. United States*, 613 F.2d 114, 116 (5th Cir.1980), noted, "[a] litigious plaintiff pressing a frivolous claim, though rarely succeeding on the merits, can be extremely costly to the defendant and can waste an inordinate amount of court time." Under the circumstances presented in this case and by these plaintiffs it is proper for this Court to issue an injunction against relitigation, pursuant to 28 U.S.C. § 1651(a).

Furthermore, as in the case of *Heritage Hills Fellowship v. Plouff*, 555 F.Supp. 1290, 1298 (E.D.Mich.1983), "[n]ot only has [Eligio Castro] repeatedly filed actions asserting the same claim, he also has far exceeded the limits of dignity and decency in the papers filed with the court." A look through the files of the cases filed in this Court reveals that Mr. Castro's motions and papers have, on occasion, been personally insulting and abusive to defendants, their attorneys and individual officers and employees of the FDIC. *See, e.g.,* docket entry #22, accusing defendants of fabricating documents to discredit plaintiffs; Exhibit A to defendants' motion to dismiss, in which Castro makes several accusations against FDIC employees; Exhibit T to the motion to dismiss, in which, among other things, Castro states that "the office of personnel in Washington sent mentally retards (sic), morons and homos by the dozen to the point where Puerto Rican bankers referred to the FDIC as the 'homoe colony' ....'; Affidavit of Eligio Castro dated February 1, 1984; docket entries #33 and #35, accusing the FDIC's

attorneys of improper and unethical behavior. This type of conduct by a litigant, even a *pro se* litigant, cannot and will not be tolerated by this Court.

WHEREFORE, in view of the above, IT IS ORDERED, ADJUDGED AND DECREED that this case be and is hereby DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that plaintiffs, Eligio Castro and Rafael Díaz Díaz, be and they hereby are PERMANENTLY AND FOREVER ENJOINED from filing additional pleadings in this case and from relitigating, or attempting to relitigate, by commencing any lawsuit or other legal proceeding against the United States or the Federal Deposit Insurance Corporation with respect to the nonrenewal of their temporary appointments with the FDIC or to events arising out of matters set forth in this case or their prior litigation over that nonrenewal.

IT IS FURTHER ORDERED that the Clerk of this Court is directed to certify two copies of this Order and cause the same to be personally served by the United States Marshal upon the plaintiffs in this case. In the event either plaintiff cannot be located at his last known place of residence, the same may be served by certified mail.

IT IS FURTHER ORDERED that if plaintiffs believe that this Order is erroneous, they are to file an appeal rather than a new lawsuit. If, however, plaintiffs choose to file new lawsuits and thereby defy this Court, the FDIC is directed to file a petition to cite plaintiffs for contempt. While attorneys understand the gravity of a contempt citation, the *pro se* plaintiffs in this case may not. Therefore, this Court wishes to be explicit as to the sanctions that will follow from the violation of the decree. If plaintiffs defy this Order, they will face a possible fine and/or imprisonment as punishment for contempt of this Court. *See, Heritage Hills Fellowship v. Plouff, supra.*

IT IS FURTHER ORDERED that plaintiffs be assessed costs pursuant to 28 U.S.C. § 1927. We believe that the conduct of plaintiffs in this case falls squarely within the purview of § 1927, and, thus, plaintiffs are liable for the excess costs generated by their unreasonable and vexatious multiplication of the proceedings in this case. Costs to defendants.

IT IS SO ORDERED.