GENERAL OFFICE PRODUCTS CORP., Plaintiff, Appellant,

v.

M.R. BERLIN CO., INC., Defendant, Appellee.

No. 84–1530.

United States Court of Appeals, First Circuit.

Argued Nov. 9, 1984.

Decided Dec. 7, 1984.

Philip E. Roberts, Hato Rey, P.R., for plaintiff, appellant.

Marcos Rodriguez-Ema, San Juan, P.R., with whom Brown, Newsom & Cordova, San Juan, P.R., was on brief for defendant, appellee.

Before BOWNES, Circuit Judge, McGOWAN,* Senior Circuit Judge, and BREVER, Circuit Judge.

BOWNES, Circuit Judge.

This is a breach of contract diversity action. Plaintiff-appellant, General Office Products Corp. (General), appeals from a grant of summary judgment to defendant-appellee, M.R. Berlin Co., Inc. (Berlin).

The relevant facts can be stated briefly. General, a Puerto Rico company, purchased 20,000 pounds of tinplate from Berlin in Baltimore, Maryland. The order was subsequently shipped to Puerto Rico and stored without being opened or inspected in General's warehouse for more than thirty days. After examining the tinplate, General claims that it found some of it rusty and that a subsequent analysis showed that the tinplate was not of the type and quality ordered. Suit was brought.

In its answer, Berlin pleaded two Puerto Rico statutes of limitations as bars. Article 254 of the Puerto Rico Commerce Code, P.R.Laws Ann. tit. 10, § 1712, provides in pertinent part: "A purchaser shall have a right of action against vendor for defects in the quantity or quality of merchandise received in bales or packages, provided he brings his action within the four days following its receipt." Article 260 of the Code, P.R.Laws Ann. tit. 10, § 1718 provides: "A purchaser who has not made any claim based on the inherent defects in the article sold, within the thirty days following its delivery, shall lose all rights of action against the vendor for such defects." Berlin moved for summary judgment on the grounds that either or both statutes barred General's suit.

* Of the District of Columbia Circuit, sitting by designation.

General's answer to the motion for summary judgment was that neither Article 254 nor Article 260 applied because this was a sale by sample and, under Puerto Rico law, the statute of limitations for such a sale is fifteen years. Article 245 of the Code, P.R.Laws Ann. tit. 10, § 1703, which covers a sale by sample provides in pertinent part:

> If a sale is made by samples or by fixed quality known to commerce, the purchaser shall not refuse to receive the goods contracted for, provided they conform to the sample or to the quality previously stated in the contract.

> In case the purchaser refuses to receive said goods, experts shall be appointed by the parties, and said experts shall decide as to whether or not the goods are receivable.

The issue is whether the district court erred in finding on the basis of affidavits filed on the summary judgment motion that there was not a sale by sample.

█ In reviewing a grant of summary judgment, we must view the record in the light most favorable to the party opposing the motion, and indulge all inferences favorable to that party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Stephanischen v. Merchants Despatch Transportation Co.*, 722 F.2d 922, 928 (1st Cir. 1983).

We agree with the district court's definition of a sale by sample:

> A sale by sample is where a small quantity of any commodity is exhibited by the vendor as a fair specimen of a larger quantity, called the bulk, which is not present, and there is no opportunity for a personal examination. To constitute such sale, it must appear that the parties contracted solely with reference to the sample, and mutually understood that they were so dealing in regard to the quality of the bulk.

*Reynolds v. Palmer*, 21 Fed. 433, 435 (Circuit Court, W.D.N.C.1884).

█ We think, however, that an affidavit filed by General raised an issue of material fact as to whether the tinplate was sold by sample. Julio Garriga Martinez, president of General, filed the following affidavit.

1. In the middle of April, 1983 I visited Baltimore Tinplate, a division of defendant, at its plant at Baltimore, Md. for the purpose of inquiring about purchasing tinplate to be used by General for the manufacture and sale of metal fasteners in Puerto Rico.

2. Prior to visiting Baltimore Tinplate, I had purchased a box of ACCO metal fasteners in order to show Baltimore Tinplate exactly the type of tinplate General wished to purchase.

a) Annexed hereto as exhibit "1" is an identical sample of what I had bought to show Baltimore Tinplate.

3. At Baltimore Tinplate I spoke to Mr. Dean Garland and Mr. John Dergentis, the former being the general manager and the latter a sales' [*sic*] representative.

a) I showed both Mr. Garland and Mr. Dergentis the ACCO sample; both of them told me that Baltimore Tinplate supplied ACCO with tinplate and they knew exactly what I wanted.

b) Mr. Garland then showed me a sample of the tinplate made into the ACCO fastener (and prong) and also gave me the specifications for same.

c) Mr. Garland mentioned to me that inasmuch as they had never dealt with General before, they would require payment in advance, and that the order would go out to Puerto Rico immediately upon payment; no other terms were mentioned to me.

4. I told both Mr. Garland and Mr. Dergentis that I would speak to my brother Rodolfo, vice-president of General, upon my return to Puerto Rico and that in all likelihood an order would be placed with them on the basis of my talk with them.

Julio Garriga's brother, Rodolfo, stated in the affidavit he filed:

3. On May 31, 1983 I wrote to Mr. Dergentis; the letter specified the type tinplate to be shipped (the same as ACCO used); the letter contained a check for $7,700.00 to cover the cost of the tinplate ordered by General. See exhibits "B" and "C".

The statement that Garland and Dergentis told Julio Garriga that they knew exactly what he wanted and then showed him a sample of the tinplate and gave him its specifications, and the order by Rodolfo Garriga referring specifically to the ACCO fasteners is sufficient for a viable claim that the sale was by sample. We do not know whether the district court overlooked these affidavits; they were not referred to in its opinion.

In finding that there was not a sale by sample, the district court apparently relied on a statement by the Spanish commentator, R. Gay de Montella, discussing sales by sample under Article 327 of the Spanish Commerce Code which parallels Article 245 of the Puerto Rico Commerce Code. Gay de Montella's comment was:

> The seller having sent the sample, incorporates it into the contract, thus transforming said sample into a part of the contract and into a formal element thereof ... the determination of the seller in providing goods identical to the sample must coincide with the determination of the buyer in acquiring goods identical to the sample.

Codigo de Comercio Espanol, Vol. III–1. p. 177.

The district court felt that because the putative purchaser showed the ACCO fasteners to the seller, there could be no sale by sample. This, however, overlooks paragraph 3 b) of Julio Garriga's affidavit which states that *he, the buyer, was shown a sample* of the tinplate *by the seller* and given the specifications for this type of tinplate. Neither the district court nor the appellees have cited any cases under either the Puerto Rico Code or its Spanish equivalent holding that under the facts here there could not be a sale by sample.

We find that the affidavits of Julio Garriga and his brother Rodolfo were sufficient to raise an issue of fact as to whether the tinplate was sold by sample under Article 245 of the Puerto Rico Commerce Code.

*Reversed and remanded for a trial on the merits.*

Costs to appellant.