Robert J. ORNELLAS

v.

Captain L.L. LAMMERS, U.S.N., individually and as Commander, United States Navy, Portsmouth Naval Shipyard, Portsmouth, NH; Captain R.W. Smith, U.S.N., individually and as Acting Commander, Portsmouth Naval Shipyard; Captain Donald Briselden, U.S.N., individually and as Public Works Officer, Portsmouth Naval Shipyard; Captain J.F. Yurso, U.S.N., Retired, individually and as former Commander, Portsmouth Naval Shipyard; Jesse Latham, individually, and as Public Works Superintendent, Portsmouth Naval Shipyard; Marsha Pogar, individually and as EEO Representative, Portsmouth Naval Shipyard; John Does 1–10 inclusive, persons whose names are unknown to Plaintiff but were employees of the United States Navy.

Civ. No. 85–343–D.

United States District Court, D. New Hampshire.

April 1, 1986.

Steven Eric Feld, Portsmouth, N.H., for plaintiff.

Susan Warshaw, Washington, D.C., Susan L. Howard, Asst. U.S. Atty., Concord, N.H., for defendants.

## ORDER

DEVINE, Chief Judge.

This is an employment discrimination action wherein plaintiff Robert J. Ornellas brings suit against six named officials of the Portsmouth Naval Shipyard ("the Shipyard") in both their individual and their official capacities: L.L. Lammers, Commander of the Shipyard; R.W. Smith, Acting Commander; Donald Briselden, Public Works Officer; J.F. Yurso (Retired), Former Commander of the Shipyard; Jesse Latham, Public Works Superintendent; and Marsha Pogar, Equal Employment Opportunity ("EEO") Representative.[1] In a five-count, 77-paragraph complaint, plaintiff alleges that these defendants deprived him of rights protected by the Fifth Amendment of the United States Constitution; 42 U.S.C. §§ 1985 and 1986; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.; and Executive Order 11478.[2] Plaintiff seeks: an order enjoining defendants from discriminating against him; to be put in the position he would have held but for the discrimination (retroactive promotion and back pay); and monetary damages including punitive and/or enhanced damages for the infliction of severe emotional stress. Presently before the Court is defendants' motion to dismiss or for summary judgment[3] pursuant to Rule 12(b)(1), (3), (4), (5), and (6), and Rule 56, Fed.R.Civ.P., and plaintiff's objection thereto.

In considering a motion to dismiss, the Court follows the well-established requirement that "the material facts alleged in the complaint are to be construed in the light most favorable to the plaintiff and taken as admitted, with dismissal to be ordered if the plaintiff is not entitled to relief under any set of facts he could prove." *Chasan v. Village District of Eastman*, 572 F.Supp. 578, 579 (D.N.H.1983), *aff'd without opinion*, 745 F.2d 43 (1st Cir.1984) (citations omitted). In reviewing motions to dismiss, the Court's focus is limited to the allegations contained in the complaint itself. *Litton Industries v. Colon*, 587 F.2d 70, 74 (1st Cir.1978). In contrast, under Rule 56(c), Fed.R.Civ.P., summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party must affirmatively demonstrate that there is no genuine, relevant factual issue, and the Court must look at the record in the light most favorable to the party opposing the motion and indulge all inferences favorable to that opposing party. *General Office Products Corp. v. M.R. Berlin Co., Inc.*, 750 F.2d 1, 2 (1st Cir.1984); *Donovan v. Agnew*, 712 F.2d 1509, 1516 (1st Cir. 1983). The Court is able to render a ruling on Counts I–IV on the former standard (motion to dismiss), but will turn to the summary judgment standard as regards Count V. The following lengthy review of the facts is necessary as background to a discussion of plaintiff's claims.

Plaintiff, of Hispanic origin, is and has been for at least six years a civilian employee of the United States Navy at the Shipyard. In the spring of 1982, he was promoted to the position of Superintendent of Transportation, GM–13. In June of 1982 plaintiff and another supervisor were accused of sexually harassing and discriminating against a female subordinate. These

---

1. The affidavit of Lorraine Oeser, EEO Specialist, Defendants' Exhibit 1, identifies Ms. Pogar as the "Acting Labor Relations Division Head" from the Industrial Relations Office ("IRO"). Oeser Affidavit, p. 12.

2. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343(a)(4).

3. Defendants also move to strike plaintiff's demand for a jury trial and plaintiff's request for damages other than those to make him "whole". Given the Court's ruling on the motion to dismiss or for summary judgment, this motion to strike need not be addressed.

allegations were investigated, and in June 1983 an extensive report was issued by the Navy Civilian Personnel Command which contained a recommended finding of discrimination. Defendant Latham recommended that plaintiff be discharged as a result of this finding, but plaintiff was ultimately only demoted to a lower-level position, that of Maintenance Scheduler, WD–7, effective on October 16, 1983. Plaintiff did not file any EEO complaints as a result of this discipline, though he now alleges in his complaint that: he was not guilty of sexual harassment; the alleged victim has admitted that the allegations against plaintiff were a complete fabrication; the allegations against plaintiff were filed four months after the legal deadline for filing such complaints; and the other accused supervisor, a white man, was given only a 30-day suspension from work, without demotion from his managerial position.

In January 1984 plaintiff applied for a promotion to the position of Transportation General Foreman, a position he had held prior to being the Superintendent of Transportation. Based on a marginal annual performance appraisal for the period of July 1982 to June 1983 and a voucher concerning his past work performance filled out by defendant Latham in December 1983, plaintiff was given an overall rating of 71.1, which put him in the minimally "qualified" category for the position, and plaintiff was not selected for the promotion. On January 24, 1984, plaintiff made an informal complaint to an agency EEO counselor because of this low rating. He raised numerous issues as to the impropriety of the rating process, and he claimed that he was being discriminated against because of his prior participation in an EEO matter. Plaintiff avers that he also alleged discrimination on the basis of his Hispanic background in this informal complaint, which defendants deny. The counselor was not able to informally resolve plaintiff's complaint, and plaintiff filed his formal complaint with the agency on March 1, 1984. Plaintiff raised nine claims of discrimination in this complaint, as follows:

1. The public works officer used a complaint filed before the rating period of which no decision was made until after the rating period to determine my performance rating for the period of 1 July 82 to June 83.

2. The public works officer deliberately gave me a low rating to prevent me from any future promotional opportunities by merit promotion.

3. The public works officer was aware of my Hispanic descent and was aware of the existing vacancy for the General Foreman Transportation position and deliberately rated me low so [as] to preclude any consideration [of] the only minority applying for this position.

4. The public works officer during a review of my performance rating in June of 83 implied that my performance rating overall was satisfactory but yet when I wasn't present rated me as marginal.

5. The public works officer intentionally deprived me of a copy of my performance rating thus depriv[ing] me of my appeal rights under the Merit Pay System.

6. The public works superintendent intentionally and illegally filled out an appraisal voucher on me for the Gen. Foreman's position even though he had not been my supervisor for 90 consecutive days nor had any knowledge of my past performance as a general foreman.

7. The public works superintendent knew that I was classified as a minority and as the selecting official intentionally gave me a low rating to preclude my being promoted to general foreman.

8. The rating specialist and his supervisors after being made aware orally and in writing of the discrepancies intentionally refused to re-rate my rating and refused to change its policy on the use of my previous performance rating and performance voucher.

9. The public works officer and public works superintendent deliberately gave me a marginal rating after having given both of my general foremen a Highly Satisfactory performance rating and Sus-

tained Superior performance award for the same rating period as mine in an attempt to preclude me from any further advancement or promotions based on an alleged EEO complaint for which I had already received a disciplinary action, but yet they continue to impose additional disciplinary actions by their actions on this attempt to be promoted.

Ornellas's Complaint of Discrimination, Defendants' Exhibit B.

By letter of April 18, 1984, plaintiff was informed that the agency was only accepting issues # 6 (the "90-day" issue) and # 8 (the "re-rating" issue) for formal processing; the other seven issues were rejected by being either untimely (# 's 1, 2, 3, 4, 5, 9) or not discussed with the EEO counselor (# 7). This letter clearly informs plaintiff that the rejection of these seven issues constitutes the final Department of the Navy decision on these claims, and that plaintiff had the alternative appeal rights of filing an appeal with the Equal Employment Opportunity Commission ("EEOC") in Washington, D.C., within twenty days or of filing a civil action in an appropriate United States District Court within thirty days. In response, plaintiff wrote the Shipyard EEO office and requested that the decision to reject these seven issues be reversed. On May 3, 1984 (still within the time limits to appeal to the EEOC or to file a civil action), plaintiff was contacted by the Shipyard Equal Employment Manager, Mr. Banta, and again was informed of the correct appeal procedures. Plaintiff did not pursue his right to appeal the rejection of these seven claims within the allowable time frames.

On August 31, 1984, plaintiff's position as a Maintenance Scheduler WD-7 was reclassified to Production Controller GS-9 (as were all others in the Maintenance Scheduler position). Plaintiff sought EEO counseling as a result of this demotion because he felt that defendants Briselden and Latham had discriminated against him when they deliberately placed him in the WD-7 position as an adverse action in October 1983, knowing he would be even further downgraded by the reclassification. At his final interview with the counselor on January 16, 1985, plaintiff was advised how to file a formal complaint on this matter, but he never did so.

On February 8, 1985, the Shipyard received the Naval Civilian Personnel Command Investigator's report as to the two claims from plaintiff's March 1, 1984, complaint that were accepted for processing. The report recommended a finding of no discrimination. As a standard part of the administrative complaint process, an informal meeting was then held on March 13, 1985, to discuss the report in an attempt to reach a resolution of the complaint. Plaintiff attended the meeting with his attorney, and defendants Smith, Briselden, and Pogar were also present. Plaintiff alleges that at this meeting Pogar stated (and Briselden supported) that plaintiff could never be trusted again as a manager because of his involvement in the prior EEO matter and that as a result there was a permanent prohibition on promotion of plaintiff. There was no resolution of the finding of no discrimination on the two claims that were investigated, and a final decision of no discrimination was ultimately issued to plaintiff by defendant Lammers on April 29, 1985. Again, plaintiff was informed of the two available avenues of appeal to either the EEOC or a United States District Court, and plaintiff filed the instant action on May 28, 1985. In the meantime, plaintiff had also complained to various Shipyard EEO officials about Ms. Pogar's alleged statements at the March 13th meeting. On April 29, 1985, plaintiff received a letter from Captain Lammers outlining the Shipyard's position as to this incident (all other participants denied that Ms. Pogar said what plaintiff alleged), and plaintiff was told to contact the Equal Employment Manager if he wished to pursue the matter further. Plaintiff did not do so, nor did he ever initiate either an informal or a formal EEO complaint regarding this incident.

Plaintiff asserts that defendants' actions in demoting him on both occasions and in not promoting him to the position of Gener-

al Foreman establish discrimination on the basis of plaintiff's Hispanic descent and/or his prior involvement in an EEO matter. Furthermore, plaintiff claims that defendants have acted in concert and have otherwise conspired to permanently bar plaintiff from ever being promoted to any managerial position whatsoever at the Shipyard.

*Counts I–IV*

█ In Counts I–IV plaintiff alleges that defendants' actions are in violation of his rights as protected by the Fifth Amendment to the United States Constitution (Count I), 42 U.S.C. § 1985 (Counts II and III), and 42 U.S.C. § 1986 (Count IV). Defendants seek to dismiss these counts on the ground that Title VII is the exclusive remedy for alleged discrimination in federal employment. The Court agrees.

In *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), the United States Supreme Court held that § 717 of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16, provides "the exclusive judicial remedy for claims of discrimination in federal employment." *Id.* at 835, 96 S.Ct. at 1969. In *Brown*, the plaintiff, a federal employee, was precluded from asserting a claim of employment discrimination under 42 U.S.C. § 1981, but the holding regarding the exclusivity of Title VII is not limited to those cases where § 1981 is the proposed alternative cause of action. In the following cases, courts have reiterated the holding of *Brown* in finding that Title VII is the *only* action a federal employee may bring to challenge alleged employment discrimination. *DeGrace v. Rumsfeld*, 614 F.2d 796, 808 (1st Cir.1980) (§ 1981 claim precluded); *Newbold v. United States Postal Service*, 614 F.2d 46, 47 (5th Cir.), *cert. denied*, 449 U.S. 878, 101 S.Ct. 225, 66 L.Ed.2d 101 (1980) (§§ 1981, 1983, 1985, and 1986 claims precluded); *Scott v. Perry*, 569 F.2d 1064, 1065 (9th Cir.1978) (§ 1981, 1982, and 1983 claims precluded); *Gissen v. Tackman*, 537 F.2d 784, 786 (3d Cir.1976) (§ 1985 claim precluded); *Neves v. Kolaski*, 602 F.Supp. 645, 648 (D.R.I.1985) (constitutional claims precluded); *Castro v. United States*, 584 F.Supp. 252, 258 (D.P.R.1984) (constitutional claims precluded); *I.M.A. G.E. v. EEOC*, 469 F.Supp. 1034, 1036–37 (D.Colo.1979) (§ 1985[3] and Fifth Amendment claims precluded); and *Beasley v. Griffin*, 427 F.Supp. 801, 802 (D.Mass.1977) (§ 1981 claim precluded). The Court is satisfied that this line of cases directs the finding that plaintiff's sole remedy for the employment discrimination he allegedly suffered is under Title VII and thus Counts I–IV of his complaint must be dismissed. None of the cases that plaintiff cites in support of his claim that he may also proceed with his constitutional and § 1985 claims are on point or persuasive. Neither *Griffen v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), nor *Ogden v. United States*, 758 F.2d 1168 (7th Cir.1985), nor *Alvarez v. Wilson*, 431 F.Supp. 136 (N.D.Ill.1977), are cases which involve allegations of *employment* discrimination by federal employees. In *Stewart v. Thomas*, 538 F.Supp. 891 (D.D.C.1982), the court allowed a plaintiff who alleged federal employment discrimination, who had also pleaded a prima facie claim for intentional infliction of emotional distress, to proceed on this tort claim, which was a distinct cause of action from her right to be free from employment discrimination. In contrast, plaintiff has alleged no distinct causes of action which arise from other than his claims that his employer discriminated against him because he is Hispanic and/or because of his prior involvement in an EEO matter. Plaintiff merely claims that he suffered emotional injury as a result of this employment discrimination. *Brown v. General Services Administration, supra,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402, and its progeny clearly preclude plaintiff from proceeding with his claims under the Constitution or 42 U.S.C. §§ 1985 and 1986; thus, defendants' motion to dismiss Counts I–IV is granted.

*Count V*

In Count V, plaintiff alleges that defendants discriminated against him in his employment in violation of Title VII of the Civil Rights Act of 1964 and Executive

Order 11478 (as amended). As a preliminary matter, plaintiff's claim under Executive Order 11478 is precluded for the same reason Counts I–IV are—Title VII is plaintiff's exclusive remedy. *Brown v. General Services Administration, supra,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402; *Neves v. Kolaski, supra,* 602 F.Supp. at 648. Accordingly, this part of Count V is dismissed. Defendants seek to dismiss or to have summary judgment granted on plaintiff's Title VII claims for a variety of reasons having to do with untimely filings or failure to exhaust administrative remedies.[4] The Court has reviewed the extensive supplementary material which defendants have submitted on this issue (none of which as it is relevant to the Court's decision is disputed by plaintiff) and agrees that most of plaintiff's claims of employment discrimination are not properly before the Court.

■ The statute and regulations governing the administrative and appeals procedures for Title VII claims are very specific. A federal employee who seeks to bring such a complaint must exhaust the administrative remedies before he may properly bring a complaint of discrimination in district court. *Brown v. General Services Administration, supra,* 425 U.S. at 832, 96 S.Ct. at 1967. The regulations which lay out the various steps and time limits of the administrative procedures are contained at 29 C.F.R. § 1613.211, *et seq.* Under these regulations, an employee complaining of discrimination must first consult an EEO counselor within thirty days of the date of the alleged discrimination. 29 C.F.R. § 1613.214(a)(1)(i). If the complaint cannot be informally resolved by the EEO counselor, the employee has fifteen days from the date of his final interview with said counselor to submit a formal written complaint to the appropriate agency official. 29

C.F.R. § 1613.214(a)(1)(ii). The agency may accept the complaint for processing *only if* both of these time limits are met. 29 C.F.R. § 1613.214(a)(1).[5] The head of the agency may reject, *inter alia,* those complaints which were not timely filed. 29 C.F.R. § 1613.215. An employee whose complaint is so rejected for being untimely filed will receive notice of this decision and of his right to appeal the rejection by appealing to the EEOC within twenty days or by filing a civil action in a United States District Court within thirty days. 29 C.F.R. §§ 1613.215, 1613.233(a), and 1613.-281. Similarly, when the agency accepts a complaint of discrimination for processing and issues a final decision with which the complainant is not satisfied, he may pursue the same two avenues of appeal within the same time limits. 29 C.F.R. §§ 1613.221(a), 1613.233(a), 1613.281. If the complainant does not exhaust his administrative remedies (i.e., go through the informal and formal complaint process at the agency level) or does not timely file his civil action after the final adverse agency or EEOC decision, then the case is not properly before the Court, and it must be dismissed. *Brown v. General Services Administration, supra,* 425 U.S. at 835, 96 S.Ct. at 1969; *Castro v. United States, supra,* 584 F.Supp. at 258.

■ Plaintiff's complaint of employment discrimination on the part of defendants seems to break down into four different claims: (1) the validity of the finding in June 1983 that plaintiff had sexually harassed a female subordinate which resulted in his demotion in October 1983 to Maintenance Scheduler; (2) the further demotion he received in August 1984 when the position of Maintenance Scheduler was reclassified to Production Controller; (3) the statements allegedly made at the March 13,

---

**4.** Defendants also seek to dismiss this count for improper venue and because none of the named defendants are proper defendants under Title VII. In light of this Order disposing of plaintiff's claims on the merits, these issues need not be reached.

**5.** There is a provision for extending these time limits if the employee shows that he was not

notified of the time limits or if circumstances beyond the employee's control prevented him from meeting the time limits. 29 C.F.R. § 1613.214(4). However, plaintiff has never suggested that he might be so excused for his failure to timely file or exhaust his administrative remedies.

1985, meeting by Pogar and ratified by Briselden to the effect that plaintiff would never be promoted because of the prior EEO proceeding; and (4) plaintiff's non-selection for the General Foreman position in January 1984 as detailed in the nine-count formal complaint he filed with the agency on March 1, 1984. As to the first three of these, defendants claim, and plaintiff does not rebut, that he did not exhaust his administrative remedies. Plaintiff did not even seek informal EEO counseling as to claims # 1 and # 3, and plaintiff did not file a formal complaint with the agency following his final interview with the counselor as to claim # 2.[6] As to the nine allegations in claim # 4 regarding the circumstances under which plaintiff was not selected for General Foreman, the Court is satisfied that seven of these issues (#'s 1, 2, 3, 4, 5, 7, and 9) are not properly before the Court. These seven issues were rejected for processing by the Navy on April 18, 1984, pursuant to 29 C.F.R. § 1613.215, and *regardless of the propriety of the rejection,* plaintiff failed to timely file his civil suit appealing this rejection. Plaintiff was informed in the letter of April 18, 1984, of the time limits he faced should he wish to appeal the rejection, and he was again told of the appeals procedure by Mr. Banta on May 3, 1984. For whatever reason, plaintiff did not appeal the rejection of these seven issues to the EEOC or file an action in the United States District Court within the appropriate time limits. Accordingly, the Court cannot now consider these aspects of his fourth claim.

Plaintiff's unsupported assertion at pages 5–6 of his opposition memorandum that all of his discrimination claims are properly before the Court because the discrimination is continuing through the present time does not change this analysis. The "continuing violation" doctrine permits the tolling of the regulatory limitations period during which a complainant must bring his claim of discrimination to the attention of the EEO counselor under very specific and limited circumstances which are not applicable here, where no related claims were timely filed. *See United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); *Goldman v. Sears,* 607 F.2d 1014, 1018 (1st Cir.1979); *Neves v. Kolaski, supra,* 602 F.Supp. at 652–53. Accordingly, since plaintiff has not exhausted his administrative remedies or timely filed in this court his Title VII claims #'s 1, 2, and 3 and the seven rejected issues in claim # 4, the Court grants defendants' motion for summary judgment on these parts of Count V.

■ When the smoke clears, the only two Title VII claims which plaintiff administratively exhausted and timely filed in this court are issues # 6 and # 8 (the "rerating" and "90-day" issues) from plaintiff's formal complaint filed on March 1, 1984, and on which the Navy made a finding of "no discrimination" on April 29, 1985.[7] Plaintiff alleges he was discriminated against in the selection process for the position of General Foreman in January 1984 in that: the voucher concerning his past work performance was filled out by defendant Latham, who had supervised plaintiff for less than 90 days, which was in violation of Shipyard regulations; and when plaintiff brought this and other irregularities in the rating process to the attention of the rating specialist and his supervisors, they refused to re-rate him.

Defendants contest these claims and have submitted documentary evidence in

---

**6.** Plaintiff seems to claim in his memorandum at p. 4 that, as to claim # 3, he is entitled to have it consolidated with his formal complaint pursuant to 29 C.F.R. § 1613.262. Plaintiff's reliance on this regulation is misplaced. Even assuming arguendo that plaintiff, by virtue of his participation in the prior EEO matter, is a person who may bring such a claim of reprisal, consolidation under 29 C.F.R. § 1613.262(b) is not proper because the prior EEO complaint is not pending. Thus, plaintiff's only recourse under 29 C.F.R. § 1613.262(a) was to bring the reprisal complaint as a separate allegation through the administrative process, which plaintiff did not do.

**7.** Contrary to defendants' assertion, the Court finds that plaintiff has raised these two issues in his complaint. *See* Complaint ¶¶ 34, 39.

support thereof. James H. Kautz, head of the Employment Division, Industrial Relations Office at the Shipyard, in his affidavit, Defendants' Exhibit 3, states that there is no federal, Navy, or Shipyard regulation which requires that a supervisor must supervise an employee for 90 consecutive days in order to properly complete a supervisory appraisal on that employee. Kautz also attaches copies of the regulations addressing the use of supervisory appraisals in the promotion evaluation process. Kautz further states that at plaintiff's request his initial rating *was* reviewed by a staffing specialist (there was apparently no change in the rating) and that Kautz expressed his willingness to the EEO Counselor to do yet another review if plaintiff so desired. Plaintiff does not offer any evidence in response to defendants' claims on these points, and thus the Court must grant defendants' motion for summary judgment on these two issues as well. Under the Federal Rules of Civil Procedure,

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party *may not rest upon the mere allegations or denials of his pleading,* but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Rule 56(e), Fed.R.Civ.P. (emphasis added). *See also Bryson v. Royal Business Group,* 763 F.2d 491 (1st Cir.1985) (summary judgment entered for defendants when plaintiff failed to present any facts disputing those in defendants' affidavits). Plaintiff not having so responded, summary judgment must be entered against him on the "re-rating" and "90-day" issues.

In summary, defendants' motion to dismiss Counts I–IV and the claims under Executive Order 11478 of Count V is granted, and defendants' motion for summary judgment on the balance of Count V (Title VII claims) is also granted.

SO ORDERED.